UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

_____

Nos. 97-30949
and 98-30088

_____

ST. TAMMANY PARISH SCHOOL BOARD,

Plaintiff-Appellee,

versus

STATE OF LOUISIANA; THE STATE BOARD OF
ELEMENTARY AND SECONDARY EDUCATION;
LOUISIANA DEPARTMENT OF EDUCATION;
THE LOUISIANA DEPARTMENT OF HEALTH AND HOSPITALS,

Defendants-Appellants,

versus

DONNA SLOCUM, Individually and on behalf
of her minor child Daniel Slocum;
DOUGLAS SLOCUM, Individually and on
behalf of his minor child Daniel Slocum,

Defendants-Appellees.

_____

Appeals from the United States District Court
for the Eastern District of Louisiana
_____

May 27, 1998

Before KING, BARKSDALE, and PARKER, Circuit Judges.

RHESA HAWKINS BARKSDALE, Circuit Judge:

In these two interlocutory appeals, concerning the Individuals
with Disabilities Education Act (IDEA), 20 U.S.C. § 1400, *et seq.*,
the primary issue is, pending a ruling on the merits, payment of
costs for a disabled student placed at an out-of-state facility.
The State of Louisiana, the State Board of Elementary and Secondary
Education, the Louisiana Department of Education, and the Louisiana

Department of Health and Hospitals (collectively, the State defendants) appeal from four orders regarding the placement of Daniel Slocum at a private residential facility in Kansas, at the expense of the Louisiana Department of Education, during the pendency of this IDEA litigation. We **AFFIRM**, and **REMAND** for further proceedings.

I.

Daniel Slocum is an autistic child, eligible for IDEA special education and related services. Until April 1996, he was educated in a self-contained classroom in the public schools of St. Tammany Parish, Louisiana. On 3 April 1996, his parents and the School Board staff met to prepare an individualized education program (IEP) for him.

At the IEP meeting, it was agreed that, because of the recently-increased severity of Daniel Slocum's self-injurious behavior, he could no longer be educated in the self-contained classroom. Accordingly, the IEP, agreed to by the Slocums and the Board, provided that Daniel Slocum's placement was "Hospital or Homebound Services or other institution providing assessment and training and treatment". The IEP stated further that the "[s]election of the site will be made in accordance with the provisions of [State] Bulletin 1706, Section 451(B)"; and that "[r]eferral will also be made to [the Louisiana Department of Health and Hospitals] and any other appropriate State agency".

The Bulletin referenced in the IEP states: "School systems must apply to the [Louisiana] Department [of Education] when a

- 2 -

student is referred to or is to be placed in an approved public or nonpublic day or residential school *outside* the geographic area of the school system, unless the placement is in an approved cooperative operated by school systems". ***Regulations for Implementation of the Exceptional Children's Act***, Bulletin 1706, § 451B (Office of Special Educational Services, Louisiana Dept. of Educ. 7/1/94) (emphasis added).

On 4 April, the day after the IEP meeting, the Slocums' attorney informed the School Board by letter that the Slocums had enrolled Daniel Slocum in Heartspring School, a private residential facility in Wichita, Kansas, pending selection of a site by the School Board. That same day, 4 April, the School Board formally requested the Louisiana Department of Education to assist it and the Slocums in locating a residential facility for Daniel Slocum, and also requested guidance on how the placement was to be funded.

A week later, on 11 April, the Department of Education responded that, because the IEP did not indicate that a specific placement decision had been made, the Department was unable to carry out its responsibilities under Bulletin 1706, § 451B; but that, once the IEP committee had made a specific placement decision and the site selected was determined to be *outside* the geographic area of the School Board, the Department would then review the School Board's request.

In early May, the Superintendent of the School Board requested assistance from the State Superintendent of Education in determining a placement and program for Daniel Slocum.

- 3 -

That June, the Slocums requested a due process hearing, seeking to have the School Board pay for Daniel Slocum's education and related services at Heartspring.  By letter to the Department of Education, the School Board demanded in late July that the State assume those costs and advised that "the Department of Education should participate in the due process hearing if the possibility exists that the State of Louisiana might be held responsible for the cost of the residential placement".

The Department of Education's Office of Special Educational Services responded in early August that the School Board's request for State participation at the due process hearing had been referred to the legal staff for review and recommendation.  In mid-August, the Department declined the School Board's request for Department participation in the hearing.

Later that month, despite this refusal, the School Board advised the Commissioner of Administration, the Governor, and the Secretary of the Louisiana Department of Health and Hospitals

> that, based on the circumstances of the case, ... the State of Louisiana, the Department of Education, and/or the Department of Health and Hospitals need to be made parties to these proceedings.

The due process hearing was conducted on 18-20 September and 13-15 November 1996, without the participation of any of the State defendants.  In January 1997, the Independent Hearing Officer ruled in favor of the School Board, finding that the placement recommended for Daniel Slocum in the April 1996 IEP was designed to

- 4 -

address primarily medical concerns and was not required for educational purposes.

The Slocums appealed to the Louisiana Department of Education, which assigned a three-member State Level Review Panel. In April 1997, a majority of the Panel reversed the decision of the Independent Hearing Officer, concluding that residential placement at Heartspring was appropriate; and that the School Board was obligated to reimburse the Slocums for the costs of Daniel Slocum's education and related services there. The Panel stated, however, that the School Board was "not precluded from asking for a sharing of cost, expenses or reimbursement from the State Educational Authority, the State Department of Education, Department of Health and Human Resources, or any other Louisiana entity or Federal agency that they may apply to".

A week later, the Slocums filed an action in federal court against the State of Louisiana and the School Board, seeking damages and attorneys' fees. That action has been stayed pending resolution of the underlying action for the interlocutory appeals in issue (the hereinafter described action filed in district court, under IDEA, for review of the Review Panel's decision).

As noted, later in April 1997, pursuant to the IDEA, 20 U.S.C. § 1415(e)(2), the School Board filed in federal court the action which spawned these interlocutory appeals. The action is for judicial review of the State Level Review Panel's decision. Section 1415(e)(2) provides, *inter alia*, that "[a]ny party aggrieved by the findings and decision" of the state educational

agency "shall have the right to bring a civil action ... in any State court of competent jurisdiction or in a district court of the United States".  20 U.S.C. § 1415(e)(2).  Named as defendants, in addition to the Slocums, were the State of Louisiana, the State Board of Elementary and Secondary Education, the Louisiana Department of Education, and the Louisiana Department of Health and Hospitals.

On 30 June, the Slocums moved, pending resolution on the merits, for keeping the placement at Heartspring, pursuant to 20 U.S.C. § 1415(e)(3), referred to as the "stay-put" provision.  The section provides:

> During the pendency of any proceedings conducted pursuant to this section, unless the State or local educational agency and the parents or guardian otherwise agree, *the child shall remain in the then current educational placement of such child*....

20 U.S.C. § 1415(e)(3) (emphasis added).

In that motion, and also pursuant to § 1415(e)(3), the Slocums also requested that, during the pendency of the litigation, the School Board pay the costs of Daniel Slocum's education and related services at Heartspring.  They did not seek relief from the State of Louisiana or its Department of Education.  But, the School Board countered that the State should share in any assessment of such stay-put costs.

In mid-August 1997, the district court granted the Slocums' motion.  It concluded that, from the 3 April 1997 date of the State Level Review Panel's decision (rendered a year *after* the initial placement at Heartspring) until the resolution of these

proceedings, Heartspring was Daniel Slocum's § 1415(e)(3) "current educational placement". (The court decided that it would be premature for it to determine Daniel Slocum's "current educational placement" at the time of the earlier 3 April 1996 IEP, because that "would essentially be deciding the merits of the school board's" challenge to the Review Panel decision.) And, it ordered the Department of Education, not the School Board, to pay the cost of Daniel Slocum's education and related services during this "current educational placement". On 25 September, the district court denied the State defendants' motion for rehearing.

The State has appealed both orders. The district court denied the State defendants' motion for a stay pending appeal, and ordered immediate enforcement of the stay-put order. Likewise, our court and the Supreme Court denied a stay pending appeal.

In early October 1997, the State defendants moved in the district court for authority to manage or participate in Daniel Slocum's IEP conference at Heartspring, then scheduled for mid-November. That motion was denied as moot, because the November conference was postponed.

Next, the State defendants moved in early November 1997 for an order requiring scheduling and state management of an IEP for Daniel Slocum, asserting, on the basis of a Heartspring advertisement, that his condition had dramatically improved and warranted reevaluation. The State defendants maintained that the administration of Prozac to Daniel Slocum in February 1996 triggered the increase in his self-injurious behavior that March,

when the St. Tammany IEP evaluation was conducted; and that Daniel Slocum's condition improved when he was taken off Prozac, just prior to his enrollment at Heartspring in April 1996. The State defendants also asserted that the stay-put order was ineffective while it was on appeal to our court.

The district court denied the motion in late December. And, at the end of January 1998, it denied a motion for reconsideration. The State defendants have also appealed both orders.

Trial is set for 15 June 1998.

## II.

The State defendants' motion to consolidate these two interlocutory appeals is **GRANTED**. For each appeal, *based on the facts and circumstances of this case*, we conclude, *dubitante*, that we have jurisdiction under the collateral order doctrine.

Concerning the appeal from the stay-put order, *see **Susquenita School Dist. v. Raelee S.***, 96 F.3d 78, 81 n.4 (3d Cir. 1996) (stay-put order qualifies as a collateral order because it conclusively determines student's pendent placement and tuition reimbursement rights associated with such placement; resolution of those questions is completely separate from the merits issues which focus on adequacy of the proposed IEP; and the propriety of the pendent placement and the concomitant financial responsibility are not effectively reviewable on appeal of a decision on the merits).

Similarly, as for the appeal concerning the denial of the State defendants' motion for scheduling and state management of an IEP for Daniel Slocum, the orders in issue conclusively deny the

- 8 -

State defendants a right to schedule and manage an IEP pending a merits-decision; resolution of that question is separate from the merits-decision, which focuses on the adequacy of the April 1996 IEP; and the interlocutory order is not effectively reviewable on appeal of the merits-decision.

In the first appeal, the State defendants raise the following issues: (1) whether the district court erred by imposing liability on the Department of Education for interim costs pending a merits-decision; (2) whether those costs are reasonable; (3) whether the Department can obtain reimbursement from the Slocums if the State defendants prevail on the merits; (4) whether IDEA, as interpreted by the district court, is unconstitutional; and (5) whether the Slocums violated IDEA by unilaterally placing Daniel Slocum at Heartspring, without giving the School Board and/or the State defendants an opportunity to make a site determination in accordance with the IEP. At issue in the second appeal are whether the district court erred (1) by concluding that the stay-put order remains in effect while it is on appeal; and (2) by refusing to allow the State defendants to manage or participate in the formulation of Daniel Slocum's IEP.

Regarding our standard of review, the State defendants assert that their challenges to the orders raise only legal questions, reviewed *de novo*; the Slocums respond that, because the orders were entered pursuant to the IDEA stay-put provision, which functions as an automatic injunction, our review is only for abuse of discretion. Of course, we, not the parties, determine the proper

standard of review.  *See, e.g., **United States v. Vontsteen***, 950 F.2d 1086, 1091 (5th Cir.) (en banc) ("no party has the power to control our standard of review"), *cert. denied*, 505 U.S. 1223 (1992).

Our court has not considered the appropriate standard of review for such IDEA interlocutory orders.  The Act provides that "the court shall receive the records of the [state] administrative proceedings, shall hear additional evidence at the request of a party, and, basing its decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate".  20 U.S.C. § 1415(e)(2).  Accordingly, we have described the district court's § 1415(e)(2) review as "virtually *de novo*".  ***Cypress-Fairbanks Indep. Sch. Dist. v. Michael F.***, 118 F.3d 245, 252 (5th Cir. 1997), *cert. denied*, ___ U.S. ___, 118 S. Ct. 690 (1998).  And, our court will "review *de novo*, as a mixed question of law and fact, a district court's [merits-]decision that a local school district's IEP was or was not appropriate and that an alternative placement was or was not inappropriate under the IDEA".  ***Id.***

For these interlocutory appeals, however, we are not reviewing the merits of Daniel Slocum's IEP or his placement at Heartspring. Instead, we are reviewing interlocutory orders relating to Daniel Slocum's *interim* placement, to include the costs of such placement, *during the pendency of this litigation*.  Under such circumstances, we will review for abuse of discretion.  *See* 20 U.S.C. § 1415(e)(2) (authorizing court to "grant such relief as the court determines is

appropriate"); *School Committee of Town of Burlington, Mass. v. Department of Educ. of Mass.*, 471 U.S. 359, 369-70 (1985) (interpreting IDEA as conferring "broad discretion on the court" to order "appropriate" relief, including "retroactive reimbursement to parents" for the earlier costs of placement in a private school); *Susquenita*, 96 F.3d at 86-87 (interpreting IDEA to permit district court to award costs pending a merits-decision and reviewing such assessment for abuse of discretion).

In addition, our court has not considered whether IDEA permits a district court to order payment of the costs of an interim placement, prior to a merits-decision. Because the State defendants do not challenge the district court's authority to award such costs, we assume, without deciding, that such an award is authorized under IDEA, as interpreted by the Third Circuit in *Susquenita*.

A.

Concerning the district court's holding the Department of Education solely responsible for payment of the costs of Daniel Slocum's education and related services at Heartspring from 3 April 1997 (the date of the Review Panel decision) through the pendency of this litigation, the State defendants maintain that (1) the Department is not vicariously liable for the School Board's IDEA violations; (2) imposition of liability on the Department violates due process, because the State defendants were not parties to the administrative hearings; (3) the district court excluded evidence relevant to the validity of the administrative decision; (4) the

- 11 -

procedure for determining interim liability was improper; and (5) the district court erred by concluding that the Review Panel decision constituted an agreement between the State and the Slocums that Heartspring was an appropriate educational placement for Daniel Slocum.

1.

As noted, § 1415(e)(2) gives the district court authority to "grant such relief as [it] determines is appropriate". 20 U.S.C. § 1415(e). In *Burlington*, the Supreme Court construed this language as authorizing a district court to "order school authorities to reimburse parents for their expenditures on private special education for a child if the court *ultimately* determines that such placement, rather than a proposed IEP, is proper under the Act". *Burlington*, 471 U.S. at 369 (emphasis added). *Burlington* dealt with retroactive reimbursement, rather than, as here, reimbursement pending a merits-decision. But, in *Susquenita*, the Third Circuit extended *Burlington* to include awarding stay-put costs pending a merits-decision, concluding that "the concerns cited by the Court in support of retroactive reimbursement favor including the interim assessment of financial responsibility in the range of relief available under the IDEA". *Susquenita*, 96 F.3d at 86. Other than *Burlington*, which dealt with retroactive reimbursement after a merits-decision, the *Susquenita* court did not cite authority for its decision to impose financial responsibility on the school district prior to a merits-decision.

IDEA does not contain an express provision for reimbursement, or for the allocation between local and state educational agencies of financial responsibility for such reimbursement. Reimbursement to parents for private school tuition (whether retroactive or pending a merits-decision) is an equitable remedy, which may be imposed in the discretion of the district court. Accordingly, we must examine the language and structure of IDEA as a whole, in the light of its purpose, to determine whether, pending a merits-decision, it permits allocation of financial responsibility to the Department for interim placement costs. *See* **Gadsby by Gadsby v. Grasmick**, 109 F.3d 940, 952 (4th Cir. 1997). (**Gadsby** considered the cost-allocation issue in a different procedural posture — after a merits-decision.)

The purpose of IDEA

> is principally to provide handicapped children with a free appropriate public education which emphasizes special education and related services designed to meet their unique needs. The Act contemplates that such education will be provided where possible in regular public schools, with the child participating as much as possible in the same activities as nonhandicapped children, but the Act also provides for placement in private schools at public expense where this is not possible.

**Burlington**, 471 U.S. at 369 (internal quotation marks and citations omitted).

We agree with **Gadsby** that "[t]here is nothing in either the language or the structure of IDEA that limits the district court's authority to award reimbursement costs against the [state educational agency], the [local educational agency], or both in any

- 13 -

particular case." *Gadsby*, 109 F.3d at 955. We also agree that "both the language and the structure of IDEA suggest that either or both entities may be held liable for the failure to provide a free appropriate public education, as the district court deems appropriate after considering all relevant factors". *Id.*

First, IDEA places primary responsibility on the state educational agency, by providing that it "shall be responsible for assuring that the requirements of this subchapter are carried out". 20 U.S.C. § 1412(6).

> This language suggests that, ultimately, it is the [state educational agency]'s responsibility to ensure that each child within its jurisdiction is provided a free appropriate public education. Therefore, it seems clear that [a state educational agency] may be held responsible if it fails to comply with its duty to assure that IDEA's substantive requirements are implemented.

*Gadsby*, 109 F.3d at 952. In *Gadsby*, the Fourth Circuit found support in the legislative history of § 1412(6), which indicates that the provision was included in the statute to "assure a single line of responsibility with regard to the education of handicapped children". *Gadsby*, 109 F.3d at 953 (quoting S. REP. NO. 94-168, at 24 (1975)).

That the district court did not err by interpreting IDEA to allow it to impose liability upon the Department, rather than the School Board, for the costs pending a merits-decision is further supported by § 1414(d)(1):

> Whenever a State educational agency determines that a local educational agency ... is unable or unwilling to establish and maintain programs of free appropriate public education

- 14 -

which meet the requirements [for the provision of a free appropriate public education], ... the State educational agency shall use the payments which would have been available to such local educational agency to provide special education and related services directly to handicapped children residing in the area served by such local educational agency.

20 U.S.C. § 1414(d)(1).

"Under this provision, once [a local educational agency] is either unable or unwilling to establish and maintain programs in compliance with IDEA, the [state educational agency] is responsible for directly providing the services to disabled children in the area." *Gadsby*, 109 F.3d at 953. *See also* *Todd D. by Robert D. v. Andrews*, 933 F.2d 1576, 1583 (11th Cir. 1991) (state educational agency must take responsibility for providing free appropriate public education where disabled student is better served by regional or state facility than local one); *Kruelle v. New Castle County Sch. Dist.*, 642 F.2d 687, 696-98 (3d Cir. 1981) (affirming district court's order requiring state educational agency to provide student with full-time residential program where local educational agency failed to provide adequate program).

In this regard, IDEA requires state educational agencies to establish policies and procedures for the administration of funds to local educational agencies and to ensure that those funds are expended in accordance with IDEA's provisions. *See* 20 U.S.C. §§ 1413(a)(1), 1413(a)(2). And, § 1413(a)(13) directs state educational agencies to establish "policies and procedures for developing and implementing interagency agreements between the

- 15 -

State educational agency and other appropriate State and local agencies to ... define the financial responsibility of each agency ... and [to] resolve interagency disputes". 20 U.S.C. § 1413(a)(13). But, although the Department has established regulations and procedures for the development of interagency agreements, there is no applicable interagency agreement covering the dispute at hand.

*Florence County School Dist. Four v. Carter*, 510 U.S. 7, 16 (1993), directs that "[c]ourts fashioning equitable relief under IDEA must consider all relevant factors". In *Gadsby*, the Fourth Circuit stated that district courts, in determining whether to allocate reimbursement costs against the state, or the local, educational agency, should consider "the relative responsibility of each agency for the ultimate failure to provide a child with a free appropriate public education". *Gadsby*, 109 F.3d at 955. As the Fourth Circuit noted, "in some instances it would be unfair to hold the [state educational agency] liable for reimbursement costs of private school tuition, where the [local educational agency] was primarily responsible for the failure". *Id*. On the other hand, "there may be cases in which it would be unfair to hold the [local educational agency] liable for costs, where, for example, there was no appropriate facility within the [local educational agency]'s jurisdiction for the child and the [state educational agency] failed to provide an alternative." *Id*.

In determining that the Department, rather than the School Board, should be liable for the placement costs pending a merits-

decision, the district court, noting its broad equitable powers to fashion appropriate relief, considered the following factors: (1) the School Board had requested that the State participate in the administrative hearings, but it refused; (2) the State defendants had a full opportunity to brief and orally argue the cost allocation issue; (3) pursuant to § 1412(6), the Department is ultimately responsible for implementing IDEA's provisions; and (4) Congress' goal of ensuring consistency and stability in a disabled child's education would be thwarted if interagency budgetary disputes were allowed to disrupt the financing of that child's educational placement. We note also that, the day after the IEP meeting, the School Board's Supervisor of Special Education wrote to the Department's Office of Special Educational Services, requesting that the Department assist the family and the School Board to locate, evaluate, and ultimately approve a residential facility for Daniel Slocum.

We conclude that, pending a merits-decision, the district court did not abuse its discretion by allocating financial responsibility to the Department, rather than the School Board, for the costs of Daniel Slocum's education and related services at Heartspring from the date of the Review Panel's decision through the balance of this litigation. The court considered the relevant factors, and its decision is supported by the record, as well as by IDEA's structure and purpose.

Along this line, we reject the State defendants' contention that the imposition of such interim liability on the Department

violates the intent of the 1997 amendments to IDEA which, according to the State defendants, reflect congressional intent to require state supervision while continuing local responsibility. Even assuming that those amendments apply, they do not support this contention. Nothing in them prohibits a district court from exercising its discretion to allocate interim liability to the Department, rather than the School Board.

2.

Next, the State defendants contend that imposition of liability on the Department violated due process, because it was based on administrative proceedings to which they were not parties.

The State defendants assert that, although LA. REV. STAT. 17:1952 (West Supp. 1997) permits a claim against the State in the administrative process, neither the Slocums nor the School Board took the necessary steps to make the State defendants parties. That Louisiana statute requires the Department to prepare regulations and establish procedures to ensure parental participation in the determination of appropriate special education for children with disabilities. It does not contain an express provision establishing a procedural mechanism for making the State a party to IDEA administrative proceedings.

Along this line, the regulations promulgated by the Department for due process hearings and state level administrative review are found in Bulletin 1706, §§ 507-513. With respect to due process hearings, they provide:

> A parent initiates a [due process] hearing by
> sending written notice to the LEA [local

educational agency].  The LEA initiates a hearing by sending written notice to the parent and the SDE [State Department of Education].

***Regulations for Implementation of the Exceptional Children's Act***, Bulletin 1706, § 507 (Office of Special Educational Services, Louisiana Dept. of Educ. 7/1/94).  Those regulations do not contain provisions or a procedural mechanism for making the State a party to IDEA administrative proceedings.

Despite the absence of any Louisiana statute or regulation establishing such a procedure, and as described *supra*, the School Board attempted to obtain the State defendants' participation in the administrative proceedings; but, the State defendants declined. They were, however, made parties to this federal court action — the School Board's challenge to the administrative decision — and had the opportunity to participate in the proceeding to award placement costs pending a merits-decision.

In sum, the State defendants had notice and an opportunity to be heard prior to the imposition of the interim cost liability at issue.  There was no due process violation.

3.

The State defendants summarily assert that the district court erred by refusing to consider any "merits" issues challenging the validity of the administrative rulings.  Moreover, they do not state what issues should have been considered; they state merely that "the defenses set forth herein, as well as others, should have been considered by the district court before assessing interim cost liability".  We assume that the referenced issues include the

- 19 -

reasonableness of the costs, and whether they are subject to IDEA's exclusion for medical services, *see* 20 U.S.C. § 1401(17), discussed *infra*.

In **Susquenita**, the Third Circuit stressed that the issues to be reviewed in a stay-put proceeding "are narrow, involving practical questions of where [the student] should attend school while the review process proceeds, who must pay for [the] placement, and when that payment must be made"; and that "merits" issues, such as the adequacy of the IEP, were not properly before it on the interlocutory appeal. **Susquenita**, 96 F.3d at 81.

In ruling on the stay-put placement, the district court considered the narrow issues that were properly before it. To the extent that the State defendants sought consideration of issues related to the merits, such as the adequacy and meaning of the IEP, and the propriety of the placement at Heartspring prior to the date of the State Level Review Panel decision in favor of the Slocums, the district court properly refused to consider such issues in ruling on stay-put placement. As stated, the nature and reasonableness of the interim costs are discussed *infra*.

4.

The State defendants contend further that the interim cost issue should not have been determined through ordinary motion practice, because (1) the ruling was based solely on the administrative proceedings, to which they were not parties; and (2) the documents submitted by the Slocums did not provide a factual basis for determining whether Heartspring's charges were for

- 20 -

special education and related services or were, instead, subject to the medical services exclusion. *See* 20 U.S.C. § 1401(17) (excluding from definition of "related services" medical services other than for diagnosis or evaluation). The State defendants assert that the district court should have conducted an evidentiary hearing in which they would have had the opportunity to submit evidence and to cross-examine witnesses regarding Heartspring's charges.

But again, with respect to the first contention, the State defendants had the opportunity to participate in the administrative hearings; they declined to do so. Accordingly, the fact that they were not parties to those proceedings is not a basis for requiring an evidentiary hearing in district court. The State defendants' second contention, concerning the costs documentation submitted by the Slocums, is discussed in part II.B., *infra.*

5.

The district court's imposition of interim liability upon the Department is based, in part, on its conclusion that, *for purposes of the stay-put determination*, the State Level Review Panel's decision constituted an "agreement" between the Slocums and the State that Heartspring is the appropriate placement for Daniel Slocum. The State defendants challenge this conclusion, claiming the Independent Hearing Officer and Review Panel members are completely independent of the Department.

As discussed, IDEA's "stay-put" provision states, in pertinent part:

> During the pendency of any proceedings conducted pursuant to this section, *unless the state or local educational agency and the parents or guardian otherwise agree*, the child shall remain in the then current educational placement of such child....

20 U.S.C. § 1415(e)(3) (emphasis added). In **Burlington**, the Supreme Court stated that the state administrative agency's decision in favor of the parents, who had unilaterally placed their child in a private school after rejecting the IEP proposed by the school district, "would seem to constitute agreement by the State to the change of placement", and that the parents "were no longer in violation of § 1415(e)(3)" *after the date of the administrative agency's decision in their favor*. 471 U.S. at 372.

Consistent with **Burlington**, the district court did not abuse its discretion by concluding that, for purposes of § 1415(e)(3), the Review Panel decision constituted an "agreement" between the State and the Slocums that, *during the pendency of this action*, Heartspring was the appropriate educational placement.

### B.

The State defendants note that the State receives only about $400 per year per student for special education, so that the unfunded liability greatly exceeds the IDEA federal funding. Along this line, they contest the district court's not making findings that the Heartspring costs (ranging from $12,000 to $20,000 per month) were primarily for educational, rather than medical, purposes. Likewise, they assert that the court either rejected or ignored questions concerning the reasonableness of the costs, by

apparently taking the position that, for stay-put purposes, they are not subject to review.

In denying the State defendants' motion for rehearing, the district court stated that the "determination of educational or medical expenses focus[es] squarely on the substantive question of liability" and, thus, was not properly before it in ruling on the stay-put motion. This implies that, at trial on the merits, the State defendants will be given an opportunity to challenge the interim costs (*i.e.*, whether they are subject to IDEA's medical services exclusion). *See* 20 U.S.C. § 1401(17) (excluding from definition of "related services" medical services, other than for diagnosis or evaluation).

With respect to the reasonableness of the interim costs, the district court stated: "Whether Daniel [Slocum's] interim expenses are excessive as a matter of law is not at issue; IDEA makes clear that during these proceedings, Daniel is to stay at Heartspring at public expense as long as those expenses are properly documented". This implies that properly documented expenses, no matter whether unreasonable or excessive, must be paid by the State during the stay-put period. The Slocums maintain that the reasonableness of interim costs is not properly considered during the stay-put period; but, they acknowledge that reasonableness may become an issue during the merits portion of the litigation.

Although the district court stated that it would "retain oversight for the purpose of resolving disputes over reimbursement requests, which must be properly documented", it is unclear whether

such oversight includes review for reasonableness or excessiveness. For example, in a footnote to its order denying reconsideration of the order denying the State defendants' motion to manage an IEP (as discussed in part II.G., *infra*), the district court indicated that *reasonableness of the interim costs was reviewable*, and that, if they succeed on the merits, the State defendants might be able to recover funds paid to Heartspring:

> The state defendants complain that the reimbursement requests submitted by the Slocums have recently increased, justifying defendants' access to Heartspring records and greater involvement in the IEP process. If these requests are reasonable and properly documented, however, the state defendants are obligated to pay, with success on the merits the remaining avenue for recovery of these funds.

On the other hand, as discussed in part II.C., *infra*, the district court also stated that, even if the State defendants ultimately prevail on the merits and the State Level Review Panel decision is held to be erroneous, they are not entitled to be reimbursed by the Slocums for the interim costs of Daniel Slocum's education and related services at Heartspring.

It is not clear whether the State defendants have requested the district court to rule on any disputes over specific reimbursement requests. The Slocums assert that they have not; but the record reflects that the State defendants apparently believe that they lack sufficient data upon which to base a specific challenge. For example, in their motion for rehearing of the order denying their motion to conduct and manage an IEP conference, the

State defendants requested that the court order the Slocums to produce documentation to support Heartspring's invoices.

Accordingly, it is unclear whether the district court intends to allow the State defendants to be reimbursed by the Slocums for *any* of the Heartspring costs during the stay-put period, regardless of whether such costs are unreasonable, excessive, or covered by IDEA's medical services exclusion, and irrespective of whether the State defendants prevail on the merits. In any event, at some point in these proceedings, the State defendants must be given a meaningful opportunity to challenge both the nature and the reasonableness of the Heartspring costs. The timing of such an opportunity is, of course, a matter to be determined by the district court, in the exercise of its sound discretion. But, in so ruling, we do not reach, nor do we express an opinion on, whether the State defendants are entitled under IDEA to reimbursement for any such challenged stay-put costs.

### C.

The most troubling issue is whether the district court abused its discretion by concluding that the Slocums will not be required to reimburse the Department for at least some of the stay-put costs, even if the State defendants prevail on the merits. (In this regard, the State defendants contend that the district court should have required the Slocums to post a bond as security for such potential reimbursement.) This discussion overlaps with that in part II.B., because it does not seem possible — and certainly not advisable — at this stage of the litigation to attempt to

- 25 -

distinguish between unreasonable or excessive costs that pertain to discrete or episodic events or incidents, as opposed to unreasonable or excessive costs that are ongoing and fundamental to the stay-put facility. It is for the district court, in the first instance, to make that call.

In ruling that the Department is not entitled to be reimbursed by the Slocums for stay-put costs, even if the State defendants prevail — in other words, even if the Review Panel decision, which is the basis for the stay-put order and the award of interim costs, is reversed — the court reasoned as follows:

> By virtue of the State Level Review Panel's decision, the state has agreed as a matter of law with the child's placement. Even if the Court were to eventually decide that the panel's decision was in error, *an agreement still exists for the period of time leading up to this Court's decision [on the merits] and the parents would not be deemed in violation of the law during that time frame*. The parents, therefore, should not be made to reimburse the state or school board for a placement with which the state agreed and for which no violation of law took place. *In this interim period*, the parents are deemed in compliance with IDEA and Daniel is entitled to a free, appropriate public education....
>
> A primary purpose of the stay-put provision is to protect a child from being put in an unsuitable placement and possibly incurring harm while awaiting the lengthy outcome of the litigation. If parents who are in compliance with the IDEA are required to reimburse the school district or the state, parents without substantial means could be forced to leave a child in the less suitable placement because they cannot afford to pay for the private interim placement. *Additionally, parents may be forced to withdraw their child from a placement which they and the state agree is appropriate because the parents might not have the*

- 26 -

>*financial resources to repay the educational*
>*costs which accumulate during the litigation.*
>This is directly contrary to the purpose of
>IDEA.

(Emphasis added.)

Obviously, because a merits-decision lies in the future, we do not now address whether, should the State defendants prevail, the Department can recover some, if not all, of the stay-put costs. *See* **Susquenita**, 96 F.3d at 87 n.10. Restated, this issue is premature. Should it be presented to our court following a merits-decision, it will be subject to review then.

### D.

Next, the State defendants claim that, as interpreted by the district court, IDEA unconstitutionally creates an unfunded liability exceeding federal authority, in violation of the Tenth and Eleventh Amendments. They concede, however, that the existing record is inadequate for determining such significant constitutional issues as the scope of federal authority for imposing absolute and unfunded liability on the States, whether the States are being forced to provide services beyond their competence, and the legitimacy of federal regulation of state education resulting in federal redirection of state budgeting decisions.

Because the State defendants have not had a fair opportunity to develop the record on these issues, we do not address them.

For the appeal from the stay-put order, the final issue raised is whether the Slocums' unilateral placement of Daniel Slocum at Heartspring violated IDEA and constitutes a waiver of their right to seek payment of stay-put costs. This issue is not properly before us on interlocutory appeal. The Slocums enrolled Daniel Slocum at Heartspring on 4 April 1996. The stay-put order at issue deals *only* with the time period commencing a year later, on 3 April 1997, when the State Level Review Panel ruled in favor of the Slocums. The district court expressly noted that it was not determining whether the Slocums were in compliance with IDEA *before that date*, 3 April 1997.

The State defendants assert further that the Slocums cannot expect the State to pay for the costs of Heartspring, because there has never been a determination that the State defendants do not have an appropriate program or facility to meet Daniel Slocum's needs. Again, such a determination goes to the merits of the appropriateness of Daniel Slocum's IEP, and is, therefore, not properly before us. We note, however, that the State defendants acknowledged in their post-argument brief in our court that "there is no state operated facility specifically designated for children with autism" and "[t]here also is no specific interagency agreement whereby a state educational agency provides educational services to children with autism".

F.

In their second interlocutory appeal (State management of an IEP), the State defendants raise two issues. The first claim is that IDEA limits the duration of the stay-put determination to three specific proceedings: due process hearings; state administrative review proceedings; and, for reviewing such decisions, *civil actions* brought in state or federal court. 20 U.S.C. § 1415(b), (c), and (e). Under IDEA, according to the State defendants, the term "civil action" does not include appeals to circuit courts of appeals. Therefore, the State defendants assert that interim placement or "stay-put" judgments entered pursuant to 20 U.S.C. § 1415(e)(3) by a district court dissolve once such a judgment is appealed. (Of course, it is the State that is appealing.)

In support of that contention, the State defendants rely on *Kari H. v. Franklin Special School Dist.*, 125 F.3d 855 (table), 1997 WL 468326 (6th Cir. 1997) (unpublished). At issue in *Kari H.* was whether the stay-put provision continued to apply *after the district court had ruled on the merits and after the parents had appealed* that decision. For starters, pursuant to the Sixth Circuit's Rules, citation to such unpublished opinions is disfavored. In any event, in contrast to that case, we are reviewing a stay-put order prior to trial on the merits.

Restated, the district court has not yet ruled on the appropriate placement for Daniel Slocum. We note, also, that this contention is inconsistent with our court's (and the Supreme

Court's) denial of the State defendants' motion to stay the stay-put order pending appeal.

Whether the stay-put order remains in effect pending an appeal of a merits-decision is not properly before us. At issue can only be whether an interlocutory appeal of that stay-put order dissolves it. Needless to say, it does not. Otherwise, a party unhappy with the stay-put ruling, in this instance the State defendants, could simply seek to frustrate the purpose for stay-put orders by taking interlocutory appeals.

G.

The second, and last, issue raised by the second interlocutory appeal concerns the district court characterizing the State defendants' right to conduct an IEP meeting as a discovery issue for the merits proceeding. They contend that the ruling, which bars them from any meaningful participation in the IEP process until resolution of the merits, is highly prejudicial because it prohibits the State defendants, non-parties during the administrative process, from having any access or involvement in any IEP or placement decisions, despite the fact that the entire stay-put financial burden is being borne by the Department.

The State defendants assert that IDEA grants them authority to convene and manage the IEP, and, if necessary, to initiate a reevaluation of Daniel Slocum. They maintain that a dramatic improvement in his condition warrants such a reevaluation; that §§ 1401(20) and 1414(a)(5) provide that the IEP process involves continuous procedures that are not fixed as of any date, and

contemplate the need for periodic review and assessment of a child's progress; and that, because the Department is paying for the Heartspring educational services, it should supplant the local educational agency with respect to the performance of IEP-related functions.

The State also relies on regulations promulgated by the United States Department of Education, which provide:

> After a child with a disability enters a private school or facility, any meetings to review and revise the child's IEP may be initiated and conducted by the private school or facility at the discretion of the public agency.

34 C.F.R. § 300.348(b)(1).

The Slocums respond that the State defendants are not entitled to such relief because (1) Daniel Slocum is current on his IEP and there is no need for an evaluation; (2) the fact that the Department is responsible for costs during the stay-put period does not support the type of assessment sought by the State defendants; and (3) there is no legal support for such an evaluation. They contend further that the stay-put injunction protects Daniel Slocum from unwarranted assessment by the State defendants, and that, to permit them to convene an IEP conference would void the entire stay-put concept.

The Act and the regulations require that *IEPs be reviewed at least annually*, 20 U.S.C. § 1401(20); and that *regular reevaluations be conducted every three years, or more frequently when conditions warrant, or when a parent or teacher requests such reevaluation*. 34 C.F.R. § 300.534. Daniel Slocum's last St.

- 32 -

Tammany IEP was developed on 3 April 1996. According to the Slocums, another IEP was developed in May 1996 at Heartspring, and the most recent IEP was developed in May 1997 at Heartspring, with the School Board's participation. The Slocums assert that Daniel Slocum was last reevaluated in April 1996, and is not due for another reevaluation until April 1999.

In the words of the district court, it was "not persuaded that IDEA permits the relief the defendants seek". For the two reasons given below, we do not decide whether the district court may grant such relief, either pursuant to the authority cited by the State defendants, or to § 1415(e)(2), which, as stated, grants the district court "broad discretion" to "grant such relief as [it] determines is appropriate". 20 U.S.C. § 1415(e)(2); *Burlington*, 471 U.S. at 369.

First, a review and, if necessary, revision, of Daniel Slocum's IEP is to take place in May 1998; the parties have agreed that the School Board and the State defendants will be allowed to participate in this process. 34 C.F.R. § 300.344 (1997). Second, the parties apparently have commenced discovery in anticipation of the 15 June trial. It is, therefore, likely that, during such discovery, the State defendants can discover much of the information they seek.

III.

For the foregoing reasons, and subject to the concerns expressed in this opinion, the orders appealed from are **AFFIRMED**,

and the case is **REMANDED** to the district court for further proceedings consistent with this opinion.

*AFFIRMED and REMANDED*

*ENDRECORD*

*KING, Circuit Judge, specially concurring:*

*I concur in the judgment and in the opinion, except for Parts II.B and II.C, which contain dicta implying that the Louisiana Department of Education may be entitled to recoup from the Slocums all or part of the expenses that it incurred in paying for the Heartspring placement during the stay-put period. Resolution of these interlocutory appeals does not require us to address the issue of whether and under what circumstances the IDEA may authorize the Department's recoupment of costs incurred during the stay-put period.*