# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

September 19, 2022

Lyle W. Cayce
Clerk

No. 21-20229

HEATHER B., *Parent, Guardian, and Next Friend of* S.S., *a Minor with Disabilities*; NOZAR NICK S., *Parent, Guardian, and Next Friend of* S.S., *a Minor with Disabilities*; S.S., *a minor*,

*Plaintiffs—Appellants*,

*versus*

HOUSTON INDEPENDENT SCHOOL DISTRICT; PEARLAND INDEPENDENT SCHOOL DISTRICT; TEXAS EDUCATION AGENCY,

*Defendants—Appellees*.

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:17-CV-3579

Before JONES, STEWART, and DUNCAN, *Circuit Judges*.

PER CURIAM:*

Plaintiffs-Appellants Heather B. and Nick S. ("Parents") brought suit on behalf of their minor child, S.S., against Defendants-Appellees Houston Independent School District ("HISD"), Pearland Independent School

---

* Pursuant to 5TH CIRCUIT RULE 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIRCUIT RULE 47.5.4.

No. 21-20229

District ("PISD"), and the Texas Education Agency ("TEA") (collectively, "Defendants"), for alleged violations of the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. §§ 1400 *et seq.* We affirm the district court's grant of summary judgment in favor of Defendants.

## I. Factual and Procedural Background

### A.

"The IDEA offers federal funds to States in exchange for a commitment: to furnish a 'free appropriate public education'—more concisely known as a FAPE—to all children with certain physical or intellectual disabilities." *Fry v. Napoleon Cmty. Schs.*, 137 S. Ct. 743, 748 (2017) (citing 20 U.S.C. § 1412(a)(1)(A)); *see also Endrew F. ex rel. Joseph F. v. Douglas Cnty. Sch. Dist. RE-1*, 137 S. Ct. 988, 993 (2017); *Dall. Indep. Sch. Dist. v. Woody*, 865 F.3d 303, 309 (5th Cir. 2017). S.S. has been visually impaired since her birth in 2007. She lived with her Parents in Houston until 2014. During the 2009–10 school year, S.S. attended public preschool in HISD, which gave her a Full and Individual Evaluation ("FIE") and provided her Parents notice of the IDEA's procedural safeguards. *See* 20 U.S.C. §§ 1414, 1415(d).

HISD's evaluation found S.S.'s impairment was a qualifying disability, but she was not "functionally blind" because she could use her limited vision to learn (rather than using Braille or tactual symbols). HISD then held an Admission, Review, and Dismissal ("ARD") committee meeting on January 10, 2010, which determined S.S. was IDEA-eligible, developed her Individualized Education Program ("IEP"), and gave her Parents another copy of the notice. *See, e.g.*, *Endrew F.*, 137 S. Ct. at 994 (observing the IEP is the "centerpiece" of IDEA's "education delivery system"); *Lauren C. by and through Tracey K. v. Lewisville Indep. Sch. Dist.*,

904 F.3d 363, 367–68 (5th Cir. 2018) (discussing role of ARD committee in developing the IEP). The IEP proposed placing S.S. at a preschool program for children with disabilities at her public elementary school in Houston. But at the end of the school year, her Parents withdrew S.S. from public school and enrolled her in a private preschool within HISD boundaries for 2010–11. She has not attended HISD since June 2010.

In June 2014, S.S. and her family moved to Pearland, within the PISD. But S.S. continued to attend her private school in Houston. In November 2015, her Parents contacted the Texas Regional Education Service Center ("Region 4"),[1] inquiring about the availability of special education services. Region 4 advised them to contact both PISD and HISD. On January 21, 2016, Heather B. emailed an HISD employee, Angela Terry, and a PISD employee, Jacqueline Yancy, expressing interest "in having [S.S.] receive vision services" and asking "how to move forward." The email explained S.S. was low vision and attended a private school in Houston but lived in Pearland. Yancy did not respond. She resigned in March 2016 and never forwarded the email to anyone at PISD. But Terry responded that same day, telling the Parents that if S.S. "is in a private school within HISD and you want her to remain there, you can receive an evaluation and limited services if she qualifies for them through proportionate agreement." The Parents affirmed their desire to keep S.S. in private school and asked for next steps to get an evaluation.

HISD conducted another FIE in April and May, completing it on May 25, 2016. HISD then convened an ARD meeting on June 7, 2016, which determined that S.S. did not qualify for IDEA services. Because S.S. was

---

[1] Regional service centers are state administrative agencies created to assist school districts. Tex. Educ. Code §§ 8.001, *et seq*. They are educational service agencies for IDEA purposes. *See* 20 U.S.C. § 1401(5).

going to a new private school for the 2016–17 year, the ARD committee recommended another evaluation for the new environment. HISD evaluators visited S.S. three times at her new school in August and September 2016. The first two visits showed S.S. had "no problem accessing things in the environment at that time," but the third visit revealed S.S. struggling to keep up with the material on the board in math class.

Based on those observations, HISD completed a new FIE on October 26, 2016. The district found that S.S. was visually impaired, though not functionally blind, and would benefit from special education services. The ARD committee met again on January 19, 2017 and found S.S. eligible for services. But her Parents disagreed with the evaluation's findings and requested an Independent Educational Evaluation ("IEE"). *See* 20 U.S.C. § 1415(b)(1); 34 C.F.R. § 300.502. HISD agreed to pay for an IEE and to delay final determination of eligibility until after the IEE was complete. HISD commissioned Emily Gibbs, a PISD teacher for the visually impaired, to conduct S.S.'s IEE in spring 2017. While HISD's IEE progressed, the Parents emailed PISD on May 15, 2017.[2] PISD responded the next day and scheduled a meeting.

The Parents sought IDEA services through both PISD and HISD in May 2017. Gibbs issued her findings for HISD on May 30, 2017. The Parents also met with PISD, which agreed at a June 20, 2017 resolution meeting that S.S. was eligible for special services and provided her Parents with release forms for evaluations. The Parents did not sign the forms until more than a month later on July 31.

---

[2] Pam Wilson, PISD's executive director, had not seen the January 2016 email that was sent to Yancy. Wilson had PISD's IT department investigate, and they found Yancy did not forward the email to anyone at PISD.

## B.

On June 7, 2017, S.S.'s Parents filed due process complaints against HISD and PISD. The gravamen of the complaints was that the districts failed to comply with the child-find requirement and other procedural obligations under the IDEA. *See Spring Branch Indep. Sch. Dist. v. O.W. by Hannah W.*, 961 F.3d 781, 791 (5th Cir. 2020) (discussing "the IDEA's child find requirement"), *cert denied.*, 141 S. Ct. 1389 (2021); *see also* 20 U.S.C. § 1412(a)(3), (a)(10)(A)(ii). Both districts continued to work with the Parents after the complaint was filed. As PISD undertook its evaluations that summer, HISD held a third ARD meeting on June 27, 2017. There, HISD determined S.S. to be eligible for IDEA services. HISD agreed to meet to determine their IDEA obligations to S.S. as a student attending a private school within HISD while residing in PISD. *See, e.g.*, *Woody*, 865 F.3d at 309 (noting "IDEA and its regulations impose obligations on the public-school district even for students who are being educated in private schools") (citing 20 U.S.C. § 1412(a)(10); 34 C.F.R. §§ 300.130–300.148).

PISD emailed the Parents on July 18 to schedule another ARD meeting, but they did not respond. So, PISD unilaterally scheduled a meeting for August 18, 2017, which was delayed for ten days due to disagreement between the parties. The meeting was delayed again by Hurricane Harvey before reconvening on September 27, 2017. There, the ARD committee proposed a new IEP for S.S. that included help from specialists to transition S.S. into a PISD public middle school. The Parents again disagreed with this plan and requested a due process hearing.

## C.

A Special Education Hearing Officer ("SEHO") held due process hearings to evaluate the Parents' claims against HISD and PISD. In separate

decisions, the SEHO ruled in favor of the districts. It concluded that the Parents' claims were largely barred under the applicable one-year statute of limitations. To the extent the claims were not time-barred, the SEHO ruled that the districts had complied with their child-find obligations.

### D.

On November 21, 2017, S.S.'s Parents filed a complaint in federal district court to challenge the SEHO's ruling as to HISD. They later added PISD and TEA as defendants. They sought discovery from TEA on various topics. TEA resisted the discovery, moved for a protective order, and moved to dismiss the Parents' claims.

The district court eventually ruled in favor of the districts and TEA. On September 19, 2019, the court granted HISD summary judgment, ruling that the claims against it were time-barred and that it had otherwise complied with its child-find obligations. After further proceedings before a magistrate judge, on March 31, 2021, the district court accepted the magistrate's recommendation to grant PISD and TEA summary judgment as well. S.S.'s Parents timely appealed to our court.

### II. Standard of Review

In IDEA cases, our standard of review is "more expansive than the usual *de novo* review for summary judgments." *O.W.*, 961 F.3d at 790 (quoting *E.R. ex rel. E.R. v. Spring Branch Indep. Sch. Dist.*, 909 F.3d 754, 762 (5th Cir. 2018)). We review legal questions *de novo* and factual questions for clear error. *Ibid.* (quoting *Woody*, 865 F.3d at 309). "Mixed questions should be reviewed under the clearly erroneous standard if factual questions predominate, and *de novo* if the legal questions predominate." *Ibid.* (quoting *Seth B. ex rel. Donald B. v. Orleans Par. Sch. Bd.*, 810 F.3d 961, 967 (5th Cir.

2016)). Whether a district failed to provide a FAPE or timely comply with its child-find requirement are mixed questions reviewed *de novo*, with "[t]he underlying factual determinations . . . reviewed for clear error." *Ibid.* (citing *Krawietz ex rel. Parker v. Galveston Indep. Sch. Dist.*, 900 F.3d 673, 676 (5th Cir. 2018); *Woody*, 865 F.3d at 390).

## III. Discussion

The Parents challenge on several grounds the district court's dismissal of their claims against HISD, PISD, and TEA.

### A. Statute of Limitations

As a preliminary matter, we note the district court held that Texas's statute of limitations barred the Parents' claims that arose more than a year prior to June 7, 2017—the filing date of their due process complaint. *See* Tex. Admin. Code § 89.1151(c). Texas law mandates that parents request a due process hearing "within one year of the date the parent . . . knew or should have known about the alleged action that serves as the basis of the request." *Id.* The Parents do not challenge this ruling, nor do they argue that their claims fall within the statutory tolling provisions. *See* Tex. Admin. Code § 89.1151(d). Thus, our review of the Parents' appeal is limited to alleged actions that arose after June 7, 2016. *See* Fed. R. App. P. 28(a)(8)(A); *Yohey v. Collins*, 985 F.2d 222, 225 (5th Cir. 1993) (claims not properly briefed are waived).

### B. Claims Against HISD

The district court found HISD fulfilled its child-find duties for S.S., as a student enrolled in a private school within its boundaries. The Parents

argue that the district court erred because HISD unreasonably delayed finding S.S. eligible for IDEA services. We disagree.

Although S.S. is not a resident of HISD, HISD has child-find duties for children with disabilities attending private school within its boundaries. *See* 34 C.F.R. § 300.131(a) ("Each [school district] must locate, identify, and evaluate all children with disabilities who are enrolled by their parents in private . . . schools located in the school district."). Once HISD is on notice of "facts . . . likely to indicate a disability," it must identify, locate, and evaluate that private school student within a reasonable time. *O.W.*, 961 F.3d at 791. Reasonableness is measured based on the delay between notice and the school district's referral of the student for evaluation. *Id.* at 793; *see Woody*, 865 F.3d at 320 (considering time period between notice and referral for evaluation). A delay is reasonable if the district takes "proactive steps to comply with its child find duty" during this intervening period. *O.W.*, 961 F.3d at 793. Moreover, a school district's delay is excused if it is not attributable to school officials. *See Woody*, 865 F.3d at 320 (suggesting a parent's delay in returning consent forms is not attributable to the district).

Once a student is referred for evaluation, a school district must complete an FIE within 45 school days of receiving the parents' written consent for the evaluation. 19 Tex. Admin Code § 89.1011(c)(1) Following completion of an FIE, the school must then convene an ARD committee meeting within 30 calendar days to determine whether the student qualifies for IDEA services. *Id.* § 89.1011(d).

HISD's delay in referring S.S. for evaluation was reasonable. HISD received two separate notices that S.S. may qualify for IDEA services, but only one is relevant here. The Parents initially gave notice of S.S.'s suspected disabilities in a January 21, 2016 email to an HISD employee. HISD immediately responded and referred her for evaluation in April 2016. But we

do not decide whether this delay was reasonable because, as discussed, the limitations period bars claims for actions prior to June 7, 2016.

Turning to the second notice, HISD received notice that S.S. may qualify for IDEA services on June 7, 2016, when her Parents informed administrators that S.S. would be attending a new private school in the fall. Although a May 2016 FIE deemed S.S. ineligible for IDEA services, her new school environment potentially impacted her IDEA eligibility. After receiving this notice, HISD recommended additional evaluations and performed three informal observations of S.S. in her new environment once school resumed. From these observations, which concluded in September 2016, HISD referred S.S. for a complete reevaluation and completed an FIE in October 2016. These intervening observations, or "proactive steps," to collect information necessary to determine S.S.'s IDEA eligibility show that HISD's delay between notice and referral was reasonable. *See Krawietz*, 900 F.3d at 677 (a delay in referring a student for evaluation is reasonable when the district takes "proactive steps" throughout that period to "comply with its Child Find obligation").

After completing an FIE for S.S., HISD fulfilled its other child-find duties: it convened an ARD meeting that concluded S.S. qualified for IDEA services; it provided a subsequent IEE when the Parents disagreed with the ARD's findings; and it offered revised IDEA services once the IEE concluded. *See* 20 U.S.C. §§ 1414–15.

In sum, we find no reversible error in the district court's ruling that HISD fulfilled its child-find duties to S.S.

No. 21-20229

## C. Claims Against PISD

The Parents argue that PISD (1) similarly failed to fulfill its child-find duties as to S.S., and (2) failed to provide S.S. with a FAPE. The district court correctly rejected both claims.

First, the district court found that PISD timely satisfied its child-find requirements. As with the claims against HISD, we must decide whether there was an unreasonable delay between PISD's notice of S.S.'s suspected disabilities and its referral of S.S. for evaluation. We agree with the district court that, at the latest, PISD referred S.S. for evaluation on June 20, 2017, when it found S.S. eligible for IDEA services and requested parental consent for evaluation. So, we must determine when PISD received notice and whether the delay between that notice and the referral date was reasonable.

The district court found PISD had notice in March 2017 when a PISD teacher, while working for HISD, performed an IEE. But the Parents contend PISD had notice earlier: either in 2014 when S.S. moved to Pearland (located within PISD), or, alternatively, in January 2016, when the Parents emailed a PISD employee requesting vision services.[3] In our view, however, none of these three dates is the relevant one for notice purposes. We conclude instead

---

[3] Although Texas's one-year statute of limitations bars consideration of the Parents' alleged actions that arose prior to June 7, 2016, we can review "events preceding" the statute of limitations for "evidence of a child find violation." *O.W.*, 961 F.3d at 793 n.11. Since the referral date—June 20, 2017—falls within the statute of limitations, we can review when PISD had notice to determine if this referral was timely.

that PISD did not have adequate notice of S.S.'s suspected disability until May 15, 2017.

The Parents claim PISD had notice as early as 2014 when S.S. moved into PISD's boundaries but remained enrolled in a Houston private school. We disagree. "A school district's child find duty is triggered when the district 'had reason to suspect [the child] had a qualifying disability.'" *D.C. v. Klein Indep. Sch. Dist.*, 860 F. App'x 894, 901 (5th Cir. 2021) (quoting *Woody*, 865 F.3d at 320) (alteration in original). S.S.'s move to Pearland—while remaining enrolled in a private school in Houston—did not afford PISD notice that S.S. was a student within its jurisdiction, let alone that S.S. had a disability.

The Parents also claim PISD had sufficient notice when they copied both PISD and HISD administrators on a January 21, 2016 email. But the district court concluded the email did not give PISD adequate notice that the Parents sought an evaluation for IDEA services. Whether the Parents sought an IDEA evaluation is a fact question we review for clear error. *See Durbrow v. Cobb Cnty. Sch. Dist.*, 887 F.3d 1182, 1192 (11th Cir. 2018); *see also Seth B.*, 810 F.3d at 967 (reviewing "underlying factual determinations" in child-find claims for "clear error"). In the email, the Parents explained that S.S. attended a Houston private school but lived in Pearland and was interested in vision services. When the HISD administrator replied explaining that HISD could provide proportionate share services if S.S. remained enrolled in private school, the Parents stated they planned to keep S.S. in private school and proceeded with the HISD evaluation. Following that exchange, the Parents never followed up to ask PISD specifically to perform its own

evaluation. In light of that, we cannot conclude the district court clearly erred in finding that the initial email failed to give PISD effective notice.[4]

We disagree with the district court, however, that PISD had notice of S.S.'s suspected disabilities in April 2017 when a PISD teacher, Emily Gibbs, conducted an IEE for HISD. Although Gibbs was a PISD teacher, she was performing S.S.'s IEE as a private contractor for HISD. In such a role, Gibbs is prohibited from sharing S.S.'s personal information to PISD, absent her Parents' consent. *See* 34 C.F.R. § 300.622(a). Thus, any information Gibbs learned about S.S. cannot be imputed to PISD.

Rather, we conclude that PISD received notice on May 15, 2017, when the Parents emailed a PISD administrator to request special education services. The very next day, PISD promptly began the identification and evaluation process, scheduled a meeting, and referred S.S. for evaluation on June 20, 2017. PISD's approximate one-month delay, while taking proactive steps, was well within the boundaries of reasonableness.

Finally, the Parents contend that PISD failed to timely provide S.S. a FAPE, because the school district did not complete her IEP until September 2017, after the start of the school year. School districts are required to have an effective IEP for each eligible student "[a]t the beginning of each school year." 34 C.F.R. § 300.323. But the district court excused PISD's delay because (1) S.S.'s Parents did not return the necessary consent forms until July 31 (more than a month after receiving such forms), (2) the Parents had to reschedule an August ARD meeting, and (3) the rescheduled meeting was

---

[4] The district court also found PISD did not have effective notice because the PISD administrator, Jacqueline Yancy, resigned shortly after receiving this email and did not forward the email to other PISD administrators. In light of our conclusion here, we need not address that alternative finding.

delayed by Hurricane Harvey. Since the untimely IEP was not attributable to PISD's actions but was instead substantially caused by the Parents' tardiness, the district court did not err in finding the delay reasonable. *See Woody*, 865 F.3d at 320 (a three-month delay was not unreasonable where it "was not solely attributable to the District" and "neither the District nor the parent react[ed] with urgency or with unreasonable delay").

### D. Claims Against TEA.

The Parents asserted a menagerie of claims against TEA that fall under two general categories: (1) TEA has *respondeat superior* liability for the school districts' failure to find S.S.; (2) TEA systemically failed to coordinate with other state agencies to implement state-wide child-find procedures. The district court correctly rejected these claims.

First, even assuming *arguendo* that TEA may have *respondeat superior* liability for some failure on the school districts' part to find S.S. under IDEA, that would not help the Parents here.[5] As discussed, the district court did not err in finding that neither HISD nor PISD failed in their IDEA obligations to S.S. Both districts fulfilled IDEA's child-find obligations and PISD prepared an appropriate IEP, ensuring S.S. a FAPE for the 2017-18 school year.

Second, the Parents' claim that TEA failed to implement statewide child-find procedures fares no better. Specifically, the Parents argue: (1) TEA failed to coordinate with other agencies to find disabled students; and (2) TEA imposed an 8.5% cap on IDEA-eligible students. To begin with,

---

[5] *Cf. St. Tammany Parish Sch. Bd. v. Louisiana*, 142 F.3d 776, 784–85 (5th Cir. 1998) ("[I]n determining whether to allocate . . . costs against the state, or the local, educational agency, [courts] should consider 'the relative responsibility of each agency for the ultimate failure to provide a child with a free appropriate public education.'" (quoting *Gadsby by Gadsby v. Grasmick*, 109 F.3d 940, 955 (4th Cir. 1997))).

No. 21-20229

given that neither HISD nor PISD failed in their IDEA duties to S.S., it is doubtful whether the Parents would have standing to assert any systemic claim against TEA. *See Adam J. ex rel. Robert J. v. Keller Indep. Sch. Dist.*, 328 F.3d 804, 811 (5th Cir. 2003) (standing requires parties to show that a "procedural deficiency resulted in a loss of educational opportunity" or some other IDEA-related harm). In any event, the district court found no evidence supporting the Parents' claims against TEA, and on appeal the Parents fail to explain why the court clearly erred.[6]

## IV.

The district court's judgment is AFFIRMED.

---

[6] The Parents also claim the district court erred by denying their request to depose a TEA representative under Federal Rule of Civil Procedure 30(b)(6). We disagree. The court based its rulings on an extensive administrative record developed in two separate proceedings. A party's request to introduce "additional" evidence is left to the district court's discretion. *E.R. by E.R. v. Spring Branch Indep. Sch. Dist.*, 909 F.3d 754, 763 (5th Cir. 2018) (citation omitted). The Parents fail to show that the district court abused its discretion in disallowing the TEA deposition.