Paul VERHOEVEN, as Parent and Next Friend of Paul ("P.J.") Verhoeven, a Minor, Donna Verhoeven, as Parent and Next Friend of Paul ("P.J.") Verhoeven, a Minor, Plaintiffs, Appellants,

v.

BRUNSWICK SCHOOL COMMITTEE, Defendant, Appellee.

No. 98–2348.

United States Court of Appeals, First Circuit.

Heard Aug. 4, 1999.

Decided Sept. 21, 1999.

Richard L. O'Meara, with whom Michael D. Traister and Murray, Plumb & Murray were on brief, for appellants.

Amy K. Tchao for appellee.

Before TORRUELLA, Chief Judge, HILL,* Senior Circuit Judge, and BOUDIN, Circuit Judge.

TORRUELLA, Chief Judge.

Plaintiffs-appellants Paul and Donna Verhoeven ("the Verhoevens") appeal the district court's denial of their motion for an automatic preliminary injunction compelling defendant-appellee Brunswick School Committee ("Brunswick") to fund

* Of the Eleventh Circuit, sitting by designation.

their son P.J.'s interim placement in a private school during the pendency of the Verhoevens' challenge to P.J.'s educational placement in the Brunswick, Maine public school system. Although we disagree with the district court's determination that the Verhoevens' motion was moot, we nonetheless affirm the denial of that motion.

## BACKGROUND

### I. The Individuals with Disabilities Education Act

Section 1415 of the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400 *et seq.*, requires state and local educational agencies that receive federal assistance for the education of children with disabilities to establish particular procedural safeguards with respect to the provision of a "free appropriate public education" for those children. *See* 20 U.S.C. § 1415(a). The "free appropriate public education" required by the IDEA is tailored to the unique needs of the child through the implementation of an "individualized education program" ("IEP"). *See* 20 U.S.C. § 1401(8); 20 U.S.C. § 1414. Each child's IEP must be reviewed annually and revised when appropriate. *See* 20 U.S.C. § 1414(d)(4).

If the parents of the child object to the child's placement, they are entitled to file a complaint with the educational agency and to have that complaint resolved at "an impartial due process hearing." 20 U.S.C. § 1415(f). Any party aggrieved by the findings and decision resulting from the administrative hearing may then bring a civil action in state or federal court. *See* 20 U.S.C. § 1415(i)(2). Section 1415(j) provides that "during the pendency of any proceedings conducted pursuant to this section, unless the State or local educational agency and the parents otherwise agree, the child shall remain in the then-current educational placement of such child." 20 U.S.C. § 1415(j). Because this subsection is designed to preserve the status quo pending resolution of challenge proceedings under the IDEA, it is commonly referred to as the "stay put" provision.

### II. Factual and Procedural Background

P.J. Verhoeven has been identified as a student with a disability under federal and Maine special education laws. Because the Verhoevens reside in Brunswick, Maine, the Brunswick School Committee is the local education agency responsible for providing P.J. a free appropriate public education. During the 1996–97 school year, P.J. was a seventh grade student placed under an IEP at Brunswick Junior High School. At the end of the school year, P.J.'s Pupil Evaluation Team ("PET") proposed an eighth grade IEP for P.J. at Brunswick Junior High School for the 1997–98 school year. The Verhoevens, unhappy with P.J.'s similar seventh grade placement, objected and requested an administrative due process hearing to challenge the proposed IEP.

Before the administrative hearing regarding the challenge occurred, Brunswick and the Verhoevens resolved the dispute by entering into a settlement agreement. In that agreement, Brunswick and the Verhoevens agreed to temporarily place P.J. at the Southern Maine Learning Center through the end of the 1997–98 school year. The parties agreed that the PET would evaluate P.J.'s progress at the end of the school year and make a determination at that time regarding P.J.'s placement for the 1998–99 school year. The parties agreed that "[t]he purpose of this temporary placement is to use the 1997–1998 school year to effectively transition P.J. from the junior high school to the high school setting at the Brunswick High School for the 1998–1999 school year." The agreement then expressed the parties' intent: (1) that P.J. would return to the Brunswick public school system for the 1998–99 year, and (2) that the SMLC placement was a temporary placement only. The agreement also provided for costs and attorneys' fees to the Verhoe-

vens and dismissal of their due process challenge to the IEP. P.J.'s PET met on October 2, 1997 and revised his IEP to change his placement for the 1997–98 school year to SMLC.

As contemplated by the agreement, P.J. attended SMLC during the 1997–98 school year, and P.J.'s PET met on June 1, 1998 to determine P.J.'s IEP for the 1998–99 school year. At that meeting, the PET determined that P.J.'s ninth grade placement would be at Brunswick High School. After investigating the placement, the Verhoevens challenged it on July 20, 1998 by requesting an administrative due process hearing. The Maine Department of Education appointed Carol Lenna as the hearing officer and scheduled an administrative hearing for September 8, 1998.

The parties could not agree on where P.J. should be placed during the pendency of the Verhoevens' challenge. The Verhoevens contended that P.J. should "stay put" at SMLC at Brunswick's expense, while Brunswick maintained that P.J. should attend Brunswick High School. The issue was then submitted to the hearing officer for resolution. The Verhoevens now characterize this submission as the pursuit of a reviewable administrative ruling on the interim placement issue, while Brunswick claims that the parties agreed at a pre-hearing conference on August 13, 1998 to accept as final the hearing officer's decision on the interim placement issue. For whatever purpose it was sought, the hearing officer issued her "stay put" decision in a letter dated August 28, 1998, determining that P.J.'s placement pending the outcome of due process proceedings would be Brunswick High School.

Unhappy with this result, the Verhoevens filed a Verified Complaint and Motion for Automatic Preliminary Injunction with the district court. The case was assigned to United States District Judge Gene Carter. In their complaint, the Verhoevens sought relief from the hearing officer's "stay put" decision in the form of a preliminary injunction requiring Brunswick to provide funding for P.J.'s placement at SMLC "pending the completion of due process proceedings" challenging the June 1998 placement decision. Before the district court ruled on the request for a preliminary injunction, the hearing officer issued her administrative due process decision. On October 2, 1998, the hearing officer denied the Verhoevens' challenge to the IEP and ordered P.J. to be placed at Brunswick High School.

On October 14, 1998, Judge Carter denied the Verhoevens' motion for an injunction as moot. The court found that the Verhoevens' entitlement to a "stay put" injunction became moot "by virtue of the hearing officer's decision dated October 2, 1998 deciding all issues submitted to the hearing officer." The court went on to find that the parties agreed to submit the "stay put" issue to the hearing officer for resolution. The court then concluded that, because the Verhoevens agreed to submit that issue to the hearing officer for resolution, the case falls within an exception to the "stay put" provision for when the parties "otherwise agree" on a "stay put" placement. Finally, the court stated that whatever interests the Verhoevens had in seeking review of the hearing officer's placement decision fell outside the parameters of the present complaint and should be pursued by filing a separate action.

On October 30, 1998, the Verhoevens filed the present appeal of the district court's denial of their request for interim injunctive relief. Also on October 30, 1998, the Verhoevens filed a complaint for review of the hearing officer's October 2, 1998 order in the State of Maine Superior Court for Cumberland County. Brunswick subsequently removed the complaint to the United States District Court for the District of Maine, and the case was assigned to Judge Carter.

## DISCUSSION

### I. The Standard of Review

██ Due in part to ambiguity in the district court's order, the parties disagree

about the appropriate standard of review. The Verhoevens argue that the district court's order denying their request for injunctive relief as moot must be reviewed *de novo* because the mootness of the request is an issue of law. The Verhoevens also cite two cases for the proposition that review of the denial of a "stay put" injunction is plenary, because the entitlement to an automatic injunction under the "stay put" provision is a question of law. *See Woods v. New Jersey Department of Education*, 20 IDELR 439, 440 (3d Cir.1993) (unpublished decision engaging in plenary review of the issue of whether a particular educational placement is the student's "current educational placement" under the "stay put" provision); *Leonard v. McKenzie*, 869 F.2d 1558, 1564 (D.C.Cir.1989) (reviewing *de novo* the denial of a "stay put" injunction on the merits).

Brunswick responds by arguing that the standard of review of a district court's denial of a request for a preliminary injunction is abuse of discretion. *See, e.g., Starlight Sugar, Inc. v. Soto*, 114 F.3d 330, 331 (1st Cir.1997) (reviewing issuance of a preliminary injunction under a "deferential" standard, such that the court will not intervene absent a showing that the lower court "misapprehended the law or committed a palpable abuse of discretion"). Brunswick also cites cases of its own for the proposition that the applicable standard of review for "stay put" orders is abuse of discretion. *See St. Tammany Parish School Bd. v. Louisiana*, 142 F.3d 776, 782–83 (5th Cir.) (reviewing orders relating to placement during the pendency of the litigation for abuse of discretion), *cert. dismissed*, 525 U.S. 1036, 119 S.Ct. 587, 142 L.Ed.2d 490 (1998); *Susquenita School Dist. v. Raelee S.*, 96 F.3d 78, 81 (3d Cir.1996) (reviewing the district court's "stay put" order for abuse of discretion).

In the present case, the district court did not purport to reach the merits of the "stay put" dispute; it denied the motion as moot. However, the district court then appeared to reach the merits of the "stay put" issue in finding that "this case falls within the exception to the automatic 'stay put' provision" of 20 U.S.C. § 1415(j). The district court concluded that because the Verhoevens agreed to submit the "stay put" issue to the hearing officer, they "otherwise agree[d]" to depart from the "stay put" placement during the pendency of the proceedings. Exactly how this finding and conclusion lead to or flow from a mootness determination is not explained.

As a result of this ambiguity, each party offers various versions of what the district court might have ruled. We address these possibilities in turn, using varying standards of review. To the extent that what we are reviewing is the district court's determination that the Verhoevens' request is moot, we review *de novo*. *See In re Arnold & Baker Farms*, 85 F.3d 1415, 1419 (9th Cir.1996) ("Mootness is a jurisdictional issue which we review de novo."), *cert. denied*, 519 U.S. 1054, 117 S.Ct. 681, 136 L.Ed.2d 607 (1997); *F.E.R. v. Valdez*, 58 F.3d 1530, 1532–33 (10th Cir.1995) ("We review the question of mootness de novo as a matter of federal jurisdiction."). And to the extent that what we are reviewing is a legal issue under the "stay put" provision, such as the determination of what constitutes P.J.'s "current educational placement," we also review *de novo*. *See Leonard*, 869 F.2d at 1564. But to the extent that we are reviewing the district court's determinations regarding the applicability of the "stay put" provision that constitute mixed questions of law and fact, our review is more deferential. In the absence of a mistake of law, we must accept the district court's resolution of mixed questions so long as the court's conclusions are not clearly erroneous on the record as a whole. *See Hampton School District v. Dobrowolski*, 976 F.2d 48, 52 (1st Cir.1992) (applying this standard in reviewing a district court's determination of whether an educational placement was appropriate as a mixed question of law and fact).

## II. The District Court's Mootness Determination

The Verhoevens raise—and challenge—two separate bases upon which the district court could have relied in finding the Verhoevens' request for a "stay put" injunction to be moot. First, they argue that the district court could have found that the request was moot because the Verhoevens only requested "stay put" relief during the pendency of administrative proceedings, which ended with the hearing officer's decision on October 2, 1999. Second, they argue that the district court could have found that the Verhoevens forfeited their right to judicial review of the "stay put" issue by submitting the issue to a hearing officer.

### A. Duration of the Relief Requested

Brunswick and the Verhoevens both suggest that the district court may have found that the request was moot because the Verhoevens only requested relief during the pendency of the administrative proceedings, and not through any judicial action appealing those proceedings. In both their Verified Complaint and their Motion for an Automatic Preliminary Injunction, the Verhoevens requested that P.J. be allowed to remain at SMLC "pending the completion of due process proceedings to challenge" Brunswick's placement decision.

■■■ Nothing in the "stay put" provision limits the availability of "stay put" injunctions to the duration of the administrative hearings. As noted by the Verhoevens, section 1415(j) provides for "stay put" placement "during the pendency of any proceedings conducted pursuant to this section." Because "this section"—section 1415—makes available both administrative proceedings and judicial actions to appeal the administrative determination, subsection 1415(j) provides for "stay put" placement throughout both the administrative and judicial proceedings challenging a placement decision. *See Doe v. Brookline School Committee,* 722 F.2d 910, 915 (1st Cir.1983) (" '[stay put provision] is designed to preserve the status quo pending resolution of administrative and judicial proceedings under the Act.' "), quoting *Doe v. Anrig,* 692 F.2d 800, 810 (1st Cir.1982), *disagreed with on other issues by Doe v. Brookline School Committee,* 722 F.2d 910; *see also Honig v. Doe,* 484 U.S. 305, 312, 108 S.Ct. 592, 98 L.Ed.2d 686 (1988).[1]

■■■ Brunswick argues that the availability of "stay put" relief during judicial proceedings is of no consequence because the Verhoevens did not ask for it. We do not agree that the Verhoevens failed to ask for such relief. The Verhoevens asked for "stay put" relief under § 1415(j), which provides for relief during both administrative and judicial proceedings, and they asked for "stay put" relief pending the completion of "due process proceedings," which are not limited to administrative due process hearings in either the statute or the complaint. In the Verhoevens' motion, they cited *Anrig* for its statement that the "stay put" provision is designed to preserve the status quo during administrative and judicial proceedings under the IDEA. If there had been any confusion or ambiguity as to what the Verhoevens were requesting, it was surely eliminated when the Verhoevens filed their reply to Brunswick's objections to the request for a preliminary injunction. In that October 5, 1998 reply, the Verhoevens made clear

---

1. The stay put provision of subsection 1415(j) does not, however, immunize parents who challenge an IEP from an action by the school district for reimbursement should review determine that the placement proposed by the school authorities is in fact appropriate. *See Doe v. Brookline School Committee,* 722 F.2d 910. Furthermore, during the pendency of proceedings challenging an IEP, a school is free to ask the court for special relief from maintenance of the current placement during the pendency of the parents' challenge. *See Honig,* 484 U.S. at 327–28, 108 S.Ct. 592 (explaining the availability of such an action, in which the stay put provision would create a rebuttable presumption in favor of the current placement).

that they were requesting injunctive relief in the form of "stay put" placement during both administrative due process hearings and any judicial appeal of the hearing officer's decision.[2] Thus, it was error for the district court to deny the Verhoevens' request as moot to the extent that it did so because it believed that the Verhoevens only sought the narrower form of relief.

### B. The Effect of Allowing the Hearing Officer to Rule on the "Stay Put" Issue

█ The Verhoevens offer an alternative interpretation of the district court's finding of mootness: the district court may have found that the Verhoevens' motion was moot because they forfeited their right to a judicial determination of the "stay put" issue by first submitting the issue to a hearing officer. The Verhoevens derive this interpretation from the district court's finding that the Verhoevens' decision to submit the "stay put" issue to the hearing officer for resolution placed this case within the exception to the "stay put" provision for when the educational agency and the parents "otherwise agree."

This explanation of the district court's mootness determination is lacking. A finding that the Verhoevens' actions amounted to an agreement that fits within the exception to the "stay put" provision actually resolves the "stay put" injunction motion on its merits; it does not render the motion moot. Also, the district court did not state that the motion was moot due to the hearing officer's August 28, 1998 decision resolving the "stay put" issue; it stated that the motion was moot due to the hearing officer's October 2, 1998 decision, which resolved the overall placement challenge. Therefore, this proffered explanation could not have been the basis for the district court's mootness determination.

**2.** The reply and an accompanying declaration by Donna Verhoeven also make clear that the Verhoevens did in fact intend to appeal the hearing officer's decision. There was thus an active controversy regarding whether the

### C. Conclusions Regarding the Mootness of the Verhoevens' Request

In sum, we cannot agree with the district court that the Verhoevens' motion for a "stay put" injunction was mooted by the hearing officer's October 2, 1998 decision on the merits of the Verhoevens' placement challenge. Nor do we find that the motion was mooted by the hearing officer's August 28, 1998 "stay put" decision in favor of Brunswick. Therefore, the district court erred in denying the Verhoevens' motion as moot.

### III. Merits of the Verhoevens' Request for a "Stay Put" Injunction

As noted above, it appears that the district court reached the merits of the Verhoevens' request for a "stay put" injunction, despite its mootness conclusion. Therefore, we treat the district court's decision on the merits as an alternative ground for the denial and review it accordingly.

### A. The District Court's Conclusion That the Parties Satisfied the Exception to the "Stay Put" Provision By "Otherwise Agree[ing]" to Allow the Hearing Officer to Choose the Interim Placement

█ Even though the district court's findings and rationale regarding mootness are somewhat murky, its ruling on the merits of the injunction request could not be more clear. The district court concluded that because the Verhoevens agreed to submit the "stay put" issue to the hearing officer, the case falls within the "otherwise agree" exception to the "stay put" provision. We do not find this conclusion to be reversible error.

█ As noted above, section 1415(j) provides that the interim placement during

school would be barred from changing P.J.'s placement during the pendency of any such appeal although the appeal was not yet pending at the time the district court ruled.

proceedings challenging the child's regular placement shall be the child's current educational placement, "unless the . . . educational agency and the parents otherwise agree." 20 U.S.C. § 1415(j). The district court found that Brunswick and the Verhoevens "otherwise agree[d]" to let the hearing officer determine the interim placement. Nothing in section 1415(j) requires the parties to "otherwise agree" on a particular interim placement for the exception to apply; the exception apparently may apply if the parties "otherwise agree" to let a third party decide the interim placement. The question is whether the parties in fact did that here.

There is no dispute that the parties submitted the interim placement issue to the hearing officer, but that does not necessarily mean that they agreed to let her choose the interim placement within the meaning of the "otherwise agree" exception. There is a substantial difference between: (1) agreeing to allow the hearing officer to choose the interim placement and thus opting out of the "stay put" presumption under § 1415(j), and (2) agreeing to have the hearing officer, as an initial adjudicator, determine what is the proper "stay put" placement under § 1415(j). The district court found that the former occurred.

Offering the affidavit of Carolyn Crowell, Brunswick's Director of Special Services, Brunswick argued to the district court that the parties agreed at an August 13, 1998 pre-hearing conference on a process for determining the interim placement, thus satisfying the "otherwise agree" exception. Crowell declared that the parties agreed to let the hearing officer resolve the "stay put" issue and did so because of the rapidly approaching first day of school at Brunswick High School. Brunswick argued that the Verhoevens reneged on this agreement by refusing to be bound by the hearing officer's decision and by filing the motion for an injunction in district court. In response, the Verhoevens argued—and currently argue—that they never agreed to be bound by or to

forfeit review of the hearing officer's interim placement decision. We are faced with the same dispute facing the district court: one party (Brunswick) who claims that the parties viewed the hearing officer as a third party that they empowered to decide P.J.'s interim placement and one party (the Verhoevens) who claims that they, at least, viewed the hearing officer as merely the first adjudicator of the "stay put" issue.

Confronted with this dispute, the district court sided with Brunswick and found that the parties "otherwise agree[d]" to let the hearing officer decide the interim placement, and we have no basis for finding this determination to be clearly erroneous. As discussed above, in the absence of a mistake of law, we must accept the district court's resolution of mixed questions of law and fact so long as the court's conclusions are not clearly erroneous on the record as a whole. *See Hampton School District,* 976 F.2d at 52. There is no claim that the district court made a mistake of law in this context. Rather, the Verhoevens' claim here is that the district court found that the parties made an agreement which did not in fact exist. The existence of such an agreement is supported by Crowell's affidavit, in which she stated that the parties agreed on August 13, 1998 to allow the hearing officer to resolve the "stay put" dispute due to the impending first day of school.

Context lends further support to this interpretation. The agreement to let the hearing officer resolve the issue was made just before the school year was about to begin, seemingly to facilitate a stable start to the school year for P.J. Without a definitive resolution, both sides would have faced the prospect of court litigation as to the stay put issue. Letting the hearing officer settle the matter was a reasonable solution.

The Verhoevens offered no evidence to show that this agreement was not of the type envisioned by the "otherwise agree" exception and merely asserted in their

briefs that their interpretation is the correct one. Faced with competing interpretations supported by the statements of the parties or their representatives, the district court made a factual determination, which we as an appellate court are in a "perilously poor position to second-guess." *Rivera–Gómez v. de Castro,* 900 F.2d 1, 4 (1st Cir.1990). As a result, we do not find the district court's conclusion regarding the existence of an agreement under section 1415(j) to be clearly erroneous, and we therefore uphold the district court's denial of the motion for an injunction.

### B. *Leonard v. McKenzie* and Temporary Placements as the "Current Educational Placement" Under 20 U.S.C. § 1415(j)

■ Even if the district court had erred in finding that the submission of the "stay put" issue to the hearing officer satisfied the "otherwise agree" exception to the "stay put" presumption, we would be inclined to uphold the district court's denial of the Verhoevens' request for another reason. The placement at SMLC—the placement that the Verhoevens believe should prevail during the pendency of their challenge to the IEP returning P.J. to public school—was never intended to be anything more than a temporary placement. Ordering Brunswick to fund a private placement at SMLC during the challenge to the IEP is not the type of maintenance of the status quo that section 1415(j) envisions. To the contrary, it would be an extension of this temporary placement to a degree well beyond the parties' intentions at the time of the 1997 settlement agreement.

The parties agreed in the 1997 settlement agreement to temporarily place P.J. at SMLC "only through the end of the 1997–1998 school year in June 1998." They agreed that P.J.'s subsequent placements would be determined at a later date, but they agreed that the purpose of the temporary SMLC placement was to transition P.J. to placement at Brunswick High

School. The parties then expressed their expectation that P.J. would return to the Brunswick public school system for the 1998–99 school year. Under these circumstances, it cannot be said that P.J.'s "current educational placement" on July 20, 1998—the date the Verhoevens filed their challenge to the IEP reached on June 1, 1998—was the recently ended SMLC placement.

A similar arrangement was presented in *Leonard v. McKenzie,* 869 F.2d 1558 (D.C.Cir.1989). In that case, Brandon Leonard was placed in Prospect Learning Center, a public elementary school operated by the District of Columbia Public Schools ("DCPS"). Brandon's parents challenged that placement, seeking placement at the private Lab School of Washington. Brandon's parents enrolled him in the Lab School during the challenge proceedings. A hearing officer determined that both school programs were appropriate placements, meaning that Brandon's placement should be the Prospect Learning Center, but the hearing officer ordered DCPS to pay for Brandon's placement in the Lab School for the 1985–86 school year anyway due to a number of procedural violations committed by DCPS. In the order, the hearing officer stated that DCPS should plan for Brandon's return to Prospect Learning Center or another public school in the DCPS system for the 1986–87 school year.

In July of 1986, DCPS placed Brandon at Prospect Learning Center for the 1986–87 school year. Brandon's parents immediately requested a due process hearing to challenge that placement. The hearing officer then reaffirmed the earlier determination that Prospect Learning Center was an appropriate placement and therefore upheld DCPS's decision to place Brandon at Prospect Learning Center. The Leonards filed suit in federal district court, challenging the hearing officer's placement decision. The Leonards sought an injunction compelling DCPS to pay Brandon's tuition at the private Lab School during

the litigation. The district court denied the request for injunctive relief during the litigation and later affirmed the hearing officer's decision on the merits.

On appeal, the D.C. Circuit rejected the Leonards' claim that the Lab School was Brandon's "current educational placement" at the time the challenge was filed. *See id.* at 1564. The court stated: (1) that it was clear to all parties that the Lab School placement was for the 1985–86 school year only, and (2) that the hearing officer encouraged the parties to prepare for a transition back to Prospect Learning Center. *See id.* From this, the court determined that the Leonards were on notice that the Lab School would cease to be the "current educational placement" once the 1985–86 school year ended. *See id.* Accordingly, the court declined to compel DCPS to fund Brandon's interim placement at the Lab School because the Lab School was not the proper "stay put" placement under section 1415(j). *See id.*

The present situation is quite analogous to the situation presented in *Leonard.* Just as the hearing officer's statements in *Leonard* put the parties on notice that the placement at the Lab School was temporary and would cease at the end of the 1985–86 school year, the parties' 1997 settlement agreement in the present case made it quite clear that the SMLC placement was temporary and would cease at the end of the 1997–98 school year. In fact, that was precisely the parties' intent. And just as the D.C. Circuit found that Brandon's placement at the Lab School was not the "current educational placement" because it terminated at the end of the 1985–86 school year, we are persuaded that we should hold similarly that P.J.'s placement at SMLC was not the "current educational placement" because it terminated at the end of the 1997–98 school year.

The policy behind section 1415(j) supports an interpretation of "current educational placement" that excludes temporary placements like P.J.'s SMLC placement. Section 1415(j) "is designed to preserve the status quo pending resolution of administrative and judicial proceedings under the Act." *Anrig,* 692 F.2d at 810. The preservation of the status quo ensures that the student remains in the last placement that the parents and the educational authority agreed to be appropriate. However, in the case of P.J.'s temporary placement at SMLC, Brunswick and the Verhoevens never agreed that P.J. would be placed at SMLC beyond June 1, 1998. To the contrary, the parties expressly agreed that P.J. would only be placed at SMLC during the 1997–98 school year. Therefore, to maintain P.J. at SMLC during the pendency of the Verhoevens' challenge would actually change the agreed-upon status quo, not preserve it. Thus, because a reading of "current educational placement" that includes the temporary SMLC placement at issue here would thwart the purpose of section 1415(j), we decline to adopt such a reading.

We have addressed this issue at some length, even though not dispositive here, because we think it important that parents be given fair warning that an explicitly understood temporary placement is at least a risky basis for claiming "stay put" protection. Still, we do not formally resolve the issue in the abstract; it is not necessary to do so here, there are numerous factual variations that could affect the outcome, and the law in this difficult area is still evolving. Of course, in the future the matter can be resolved in relation to temporary placements by explicit language in such an agreement designating the stay put placement.

## C. Conclusions Regarding the Merits of the Verhoevens' Request

In sum, we do not disturb the district court's conclusion that the parties "otherwise agree[d]" to allow the hearing officer to determine P.J.'s interim placement, and even if we did find this conclusion to be in

error, we would be reluctant to find that P.J.'s "current educational placement" at the time of the challenge was his recently-concluded temporary placement at SMLC. Therefore, we hold that the district court properly denied the Verhoevens' request for a "stay put" injunction compelling Brunswick to fund an interim placement at SMLC during the pendency of the Verhoevens' challenge to the June 1, 1998 IEP.

## CONCLUSION

Based on the foregoing, we **AFFIRM** the district court's denial of the Verhoevens' motion for an automatic preliminary injunction.