Macdonald v. Broderick, et al.          CV-04-278-SM  09/15/04
                    UNITED STATES DISTRICT COURT

                    DISTRICT OF NEW HAMPSHIRE


Peter Macdonald,
       Plaintiff

       v.                                   Civil No. 04-278-SM
                                            Opinion No. 2004 DNH 137
Chief Justice John T. Broderick, Jr.,
Governor Craig Benson, and
the New Hampshire Supreme Court,
       Defendant


                         **O R D E R**


       Pro se plaintiff, Peter Macdonald, brings this action

against New Hampshire Governor Craig Benson, the New Hampshire

Supreme Court, and its Chief Justice, John T. Broderick, Jr.

Although it is not entirely clear from his complaint, it appears

that Macdonald is seeking a judicial declaration that the

Governor and the Chief Justice, acting in their official

capacities, violated various provisions of the state and federal

constitutions.  He also moves the court to "remove from [his]

record" a guilty verdict that was obtained against him in state

court.  Finally, it seems that Macdonald may also be seeking

$20,000 in damages, as compensation for what he says was an

unlawful "fine" assessed against him by the New Hampshire Superior Court.

Defendants move to dismiss Macdonald's complaint on various grounds, invoking the Rooker-Feldman doctrine, the doctrine of absolute judicial immunity, and the Eleventh Amendment. Despite having received defendants' concise but persuasive motion, Macdonald has not moved to amend his complaint. He does, however, object to defendants' motion.

**Background**

While not set forth in Macdonald's complaint, the factual background to this action is described in detail in defendants' motion to dismiss. Because that filing is part of the court's record (document no. 7) and because Macdonald does not dispute any of the facts set forth by defendants, the court need not recount them in detail. The court will, however, briefly describe the salient facts.

At some point in 2001, Macdonald, who is not a lawyer, became the attorney-in-fact for Glenn and Cynthia Bushong. See

2

generally N.H. Rev. Stat. Ann. 311:1 ("A party in any cause or proceeding may appear, plead, prosecute or defend in his or her proper person, that is, pro se, or may be represented by any citizen of good character.") (emphasis supplied). The Bushongs were involved in a zoning dispute with the Town of Madbury. Eventually, the Town petitioned the state court to enforce a cease and desist order the Town had issued to the Bushongs, directing them to stop using their residentially-zoned property for commercial purposes.

The court ordered the Bushongs to comply with the cease and desist order and directed them to reimburse the Town for attorney's fees it had incurred in pursuing the matter. According to Macdonald, in awarding the Town reasonable attorney's fees, the state superior court judge ruled that motions filed on behalf of the Bushongs were "vexatious, frivolous, and unreasonable" (it appears that the Bushongs and Macdonald were held jointly and severally liable for the fee award and that, it would seem, is the $20,000 "fine" of which Macdonald complains).

3

The Bushongs filed a notice of appeal with the New Hampshire Supreme Court. Contrary to Macdonald's assertion, however, the court did not declare the Bushongs' claims "moot." Rather, it declined to hear their appeal and, subsequently, denied their motion to reopen, as well as their "motion to document and correct intentional constitutional wrongs by the court" and their "motion to enforce Part First of the New Hampshire Constitution" - all of which were apparently drafted by the Bushongs with the assistance of Macdonald.

Macdonald was displeased with the state courts' resolution of the Bushongs' case. Accordingly, he began writing letters to then-Governor Shaheen and, more recently, to Governor Benson, various state legislators, and news editors. In those letters, he claimed that the Town of Madbury, the state courts, and various individuals had engaged in unconstitutional and criminal conduct. Eventually, Macdonald's complaints escalated and included statements about the use of force and violence. See, e.g., Affidavit of Robert Estabrook, Sergeant, Major Crime Unit of the New Hampshire State Police, Exhibit D to defendants' motion. In one of those letters, for example, Macdonald told

4

Governor Benson, "Innocent people get hurt during a war.  I know I have been [in a] 'conflict' and received three permanent injuries. . . . I ask you don't make me arm my militia and take over the state."  Id.  In a subsequent e-mail sent to the Governor, Macdonald wrote, "People become killers to express their final belief.  Our Constitution encourages us to start a militia to stop government abuse.  Do militia's kill?  I have filed 'Declaration of Revolution' papers . . . Is it legal for me to kill now?"  Id.

New Hampshire State Troopers met with Macdonald and explained to him "the concern which others had when reading such language, and Macdonald agreed to stop" issuing the threatening communications.  Id.  Nevertheless, Macdonald's "war of words," as he described it, did not end.  In subsequent communications sent to the Governor, Macdonald made reference to the "Declaration of Revolution" documents he had "filed," and said, "if I have to I will arm a Militia and take over the state." Later, in a fairly ominous way, Macdonald informed the Governor that, "This will be my final letter. . . . The end has arrived. The people will learn about this case some day.  You can take me

as a prisoner of war or allow my next move.  Whatever it is?  I do not care." Id.

Predictably, law enforcement officers sought and obtained an arrest warrant for Macdonald and he was charged with criminal threatening and harassment.  Macdonald eventually negotiated a plea agreement with the prosecutor under which the misdemeanor charges against him were dismissed, and he pled guilty to a lesser charge.  It does not appear that he has challenged that conviction (or his guilty plea) in state court.

## Discussion

To the extent Macdonald moves this court to vacate his state court conviction, his complaint constitutes a collateral attack on a final order of the state court.  It is, therefore, barred by the Rooker-Feldman doctrine.  See Rooker v. Fidelity Trust Co., 263 U.S. 413, 416 (1923); District of Columbia Court of Appeals v. Feldman, 460 U.S. 462, 476 (1983).  See also Sheehan v. Marr, 207 F.3d 35, 39-40 (1st Cir. 2000).  The same is true with regard to the claims by which Macdonald seeks to have this court remedy

the wrongs he says were the product of the state court decisions in the Bushongs' civil action.

With regard to Governor Benson, Macdonald alleges that the Governor "locked him up," in violation of "Part First of the NH Const. and the U.S. Const." Complaint at para. 3. Presumably, Macdonald is referring to his arrest for criminal threatening and harassment. To the extent Macdonald actually has any claim stemming from his arrest - a dubious proposition, given the fact that the arrest was supported by a warrant issued by a neutral and detached magistrate (a state district court judge) - it would lie against the officer(s) who effected his arrest and/or the officer who submitted the affidavit in support of his arrest.

Even reading the allegations of Macdonald's complaint liberally, nothing suggests a valid cause of action against the Governor stemming from the events described in the complaint. At a minimum, this is certain: the complaint fails to articulate one. To the extent Macdonald has attempted to set forth the elements of a claim against the Governor under 42 U.S.C. § 1983, the Governor, in his official capacity, is entitled to Eleventh

7

Amendment immunity.  See Will v. Michigan Dep't of State Police, 491 U.S. 58, 71 (1989) ("Obviously, state officials literally are persons.  But a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office.  As such, it is no different from a suit against the State itself.") (citation omitted).

Macdonald's official capacity claims against Chief Justice Broderick are also precluded by the Eleventh Amendment.  And, to the extent his complaint might arguably be read to assert claims against the Chief Justice in his individual capacity, such claims are barred by the doctrine of absolute judicial immunity, which shields the Chief Justice not only from liability for damages, but provides immunity from suit as well.

> Like other forms of official immunity, judicial immunity is an immunity from suit, not just from ultimate assessment of damages.  Accordingly, judicial immunity is not overcome by allegations of bad faith or malice, the existence of which ordinarily cannot be resolved without engaging in discovery and eventual trial.
>
> Rather, our cases make clear that the immunity is overcome in only two sets of circumstances.  First, a judge is not immune from liability for nonjudicial

8

actions, i.e., actions not taken in the judge's
judicial capacity.  Second, a judge is not immune for
actions, though judicial in nature, taken in the
complete absence of all jurisdiction.

Mireles v. Waco, 502 U.S. 9, 11-12 (1991) (citations omitted).
All of the acts which are the subject of Macdonald's complaint
were unarguably taken by the Chief Justice (as well as the other
state court judges referenced by Macdonald) in a judicial
capacity, and none was taken in the complete absence of all
jurisdiction.  See Stump v. Sparkman, 435 U.S. 349, 356-57 (1978)
("A judge will not be deprived of immunity because the action he
took was in error, was done maliciously, or was in excess of his
authority; rather, he will be subject to liability only when he
has acted in the clear absence of all jurisdiction.") (citation
and internal punctuation omitted).

And, finally, Macdonald's claims against the New Hampshire
Supreme Court - a state entity - are barred by the Eleventh
Amendment.  See Will, 491 U.S. at 70-71.

9

## Conclusion

For the foregoing reasons, as well as those set forth in defendants' memorandum, plaintiff's complaint fails to state a viable cause of action against any of the defendants. <u>See generally</u> Fed. R. Civ. P. 12(b)(6). Defendants' motion to dismiss (document no. 7) is, therefore, granted. Plaintiff's motion for speedy trial (document no. 5), his motion for open court hearing (document no. 9), his motion for summary judgment (document no. 10), and his motion to preserve the United States Constitution (document no. 11)[1] are all denied.

The Clerk of Court shall enter judgment in accordance with this order and close the case.

**SO ORDERED.**

_____
Steven J. McAuliffe
United States District Judge

September 15, 2004

---

[1]    Although plaintiff captioned his motion as one seeking "to preserve the United States Constitution," it actually seeks the same substantive relief as that sought in plaintiff's complaint. It is, for that reason, denied.

cc:   Peter Macdonald
       Daniel J. Mullen, Esq.