# United States Court of Appeals
## For the First Circuit

No. 21-1589

MR. AND MRS. DOE, individually and as parents and next friends
of JOHN DOE, a minor,

Plaintiffs, Appellees,

v.

PORTLAND PUBLIC SCHOOLS,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MAINE

[Hon. Jon D. Levy, U.S. District Judge]

Before

Lynch, Thompson, and Gelpí,
Circuit Judges.

Eric R. Herlan, with whom Drummond Woodsum & MacMahon
were on brief, for appellant.
Richard L. O'Meara, with whom Murray, Plumb & Murray
were on brief, for appellees.
Selene Almazan-Altobelli and Ellen Saideman on brief for
Council of Parent Attorneys and Advocates, Inc., amicus curiae.

March 29, 2022

**LYNCH**, **Circuit Judge**.     Portland Public Schools ("Portland") appeals from the entry of an order from the district court issued under the stay-put provision of the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1415(j), as implemented by 34 C.F.R. § 300.518 and judicial opinions.  The court order required Portland to pay for John Doe's tuition for the duration of this litigation at Aucocisco School ("Aucocisco"), where Doe's parents unilaterally placed him in February 2020.  Doe v. Portland Pub. Schs., No. 20-cv-00461, 2021 WL 3056372, at *1 (D. Me. July 20, 2021).  The district court found that an administrative hearing officer's reimbursement order constituted agreement between the state and the parents that a change of placement to Aucocisco is appropriate.  Id. at *4.  The court did so despite the fact that the hearing officer whose decision was being reviewed by the court had determined that the individualized education plan ("IEP") issued by Portland in January 2020 would provide a free appropriate public education ("FAPE").

Portland in fact paid for Doe's tuition for the new placement at Aucocisco for the spring and fall semesters of 2020, as the hearing officer required.  This was merely an equitable remedy the hearing officer ordered to remedy Portland's denial of a FAPE to Doe from December 2017 to November 2019.  The hearing officer separately concluded that Portland provided Doe with an IEP which met the requirements of a FAPE as of January 2020.

- 2 -

Portland appeals from the district court ordering it to pay for Doe's placement at the private school during the pendency of these proceedings.

We assert jurisdiction and reverse.[1]

## I.

We recite the facts relevant to this interlocutory appeal. When Doe was in the second grade at East End Community School ("EECS"), his parents referred him for evaluation as a potential special education student in September 2017. The IEP team met in December 2017 and concluded that he was not eligible for special education services.

At the end of Doe's third-grade year, in May 2019, his parents once again referred him for special education evaluation. The IEP team administered evaluations in the fall of 2019 and concluded in November 2019 that he was eligible for special education services. On January 24, 2020, the IEP team proposed an IEP to the Does which would have allowed for Doe's placement at any of Portland's public elementary schools.

Meanwhile, in May 2019, Doe's parents began taking him to tutoring at Aucocisco, a private school serving students with disabilities, which continued through that summer. In fall 2019, Doe's fourth-grade year, his parents unilaterally placed him at

_____

[1] We thank amicus curiae Council of Parent Attorneys and Advocates, Inc. for their helpful brief.

another Portland private school, the Breakwater School, and also engaged a private tutor for him. Then in February 2020, they moved him to Aucocisco, the school that he continues to attend today. The Does also engaged Dr. Marcia Hunter to conduct a neuropsychological examination of Doe during several visits over a period of several months spanning November 2019 to March 2020.

On November 6, 2019, while Doe was enrolled at the Breakwater School, the Does filed for a due process hearing with the Maine Department of Education, alleging that Portland violated the IDEA by finding him ineligible for special education services between December 2017 and November 2019. They also challenged the January 2020 IEP Portland had offered. After a four-day hearing, the hearing officer concluded that Doe had been denied a FAPE between December 2017 and November 2019. The hearing officer ordered Portland to reimburse the Does $74,613.35, which covered the costs of his tutoring and summer programming at Aucocisco in summer 2019, the private tutor they engaged in fall 2019 when he was at the Breakwater School, classes at Aucocisco in spring and summer of 2020, Dr. Hunter's evaluation, and the fall 2020 semester at Aucocisco. The hearing officer found, however, that the January 2020 IEP offered Doe a FAPE, and did not order continuing placement for Doe at Aucocisco.

In order to reach her conclusions regarding reimbursement and the appropriateness of the proffered IEP, the

hearing officer conducted two separate analyses. She noted that a unilateral private school placement is proper for reimbursement if it provides "'some element of the special education services' missing from the public alternative . . . ." Mr. I. ex rel. L.I. v. Me. Sch. Admin. Dist. No. 55, 480 F.3d 1, 25 (1st Cir. 2007) (quoting Berger v. Medina City Sch. Dist., 348 F.3d 513, 523 (6th Cir. 2003)). She concluded that "[t]he tutoring and programming provided by Aucocisco, as well as the tutoring provided while [Doe] was enrolled at Breakwater, easily satisfy the standard . . . by providing some element of the missing special education services."

In contrast, in determining that the January 2020 IEP was appropriate, the hearing officer applied a more rigorous standard. She noted that the IDEA "requires an educational program reasonably calculated to enable a child to make progress appropriate in light of the child's circumstances," Endrew F. ex rel. Joseph F. v. Douglas Cnty. Sch. Dist. RE-1, 137 S. Ct. 988, 1001 (2017), and it also requires that the child be placed in the least restrictive environment possible, 20 U.S.C. § 1412(a)(5)(A). After analyzing the IEP, the hearing officer concluded that "the program and placement in the IEP issued by [Portland] in January 2020 was reasonably calculated to enable [Doe] to make progress appropriate in light of his circumstances while allowing his education with peers to the maximum extent appropriate . . . ."

- 5 -

After the hearing officer's decision came down, the Does filed a complaint in federal district court in Maine on December 9, 2020 seeking damages and attorneys' fees and challenging the portion of the hearing officer's decision approving the January 2020 IEP. On March 5, 2021, they filed a motion to enforce placement at Aucocisco under the IDEA's stay-put provision. Following a hearing, the district court granted the motion on July 20, 2021, ordering Portland to pay for Doe's continued placement at Aucocisco during the pendency of these judicial proceedings. Portland now appeals that determination.

## II.

As a matter of first impression in this circuit, we find that jurisdiction over this interlocutory appeal is proper under the collateral order doctrine. See Cohen v. Beneficial Indus. Loan Corp., 337 U.S. 541, 546 (1949) (noting interlocutory review appropriate where a decision will "finally determine claims of right separable from, and collateral to, rights asserted in the action, too important to be denied review and too independent of the cause itself to require that appellate consideration be deferred until the whole case is adjudicated."). Four circuits have already concluded that there is interlocutory jurisdiction and we agree. See A.D. ex rel. L.D. v. Haw. Dep't of Educ., 727 F.3d 911, 913 (9th Cir. 2013); St. Tammany Par. Sch. Bd. v. Louisiana, 142 F.3d 776, 781-82 (5th Cir. 1998); Bd. of Educ. v.

Ill. State Bd. of Educ., 79 F.3d 654, 657-58 (7th Cir. 1996); Susquenita Sch. Dist. v. Raelee S. ex rel. Heidi S., 96 F.3d 78, 81 n.4 (3d Cir. 1996). Both parties agree in this case that jurisdiction is appropriate.

Stay-put orders are appealable under the collateral order doctrine because the appeal conclusively determines the issue of the student's placement during litigation, it resolves an important issue which is independent from the merits of the student's ultimate placement, and a stay-put order is effectively unreviewable after final judgment. See A.D. ex rel. L.D., 727 F.3d at 913.

## III.

We review the district court's determinations of legal issues de novo, and findings of fact are reviewed for clear error. Johnson v. Bos. Pub. Schs., 906 F.3d 182, 191 (1st Cir. 2018). "Where the case raises mixed questions of law and fact, we employ a 'degree-of-deference continuum,' providing 'non-deferential plenary review for law-dominated questions' and 'deferential review for fact-dominated questions.'" Id. (quoting Doe v. Cape Elizabeth Sch. Dist., 832 F.3d 69, 76 (1st Cir. 2016)). The issue in this case -- whether the hearing officer's determination constituted "agreement" between the state and the parents that Aucocisco was Doe's appropriate placement -- is a purely legal one, so our review is de novo.

**A.**

Section 1415 of the IDEA, 20 U.S.C. § 1400 et seq., outlines procedural safeguards for state and local school districts receiving federal assistance for education of children with disabilities to ensure the provision of a FAPE to those children. See Verhoeven v. Brunswick Sch. Comm., 207 F.3d 1, 3 (1st Cir. 1999).

Section 1415(j) requires that "during the pendency of any proceedings conducted pursuant to this section, unless the State or local educational agency and the parents otherwise agree, the child shall remain in the then-current educational placement of the child . . . ." Commonly referred to as the stay-put provision, this provision "is designed to preserve the status quo pending resolution of challenge proceedings under the IDEA." Verhoeven, 207 F.3d at 3. "The preservation of the status quo ensures that the student remains in the last placement that the parents and the educational authority agreed to be appropriate." Id. at 10.

Determining the last agreed-upon placement is more complicated when parents unilaterally decide to place their child at a private school without the school district's approval. An administrative decision in favor of a unilateral change of placement to private school by parents can constitute "agreement" by the state to that placement for purposes of the stay-put

- 8 -

provision. See Sch. Comm. of Burlington v. Dep't of Educ. 471 U.S. 359, 372 (1985); see also 34 C.F.R. § 300.518(d) ("If the hearing officer in a due process hearing conducted by the SEA or a State review official in an administrative appeal agrees with the child's parents that a change of placement is appropriate, that placement must be treated as an agreement between the State and the parents . . . .").

Here, the hearing officer determined that the family's actions taken between May 2019 and December 2020 (which included placing Doe at Aucocisco but also included other private tutoring and Dr. Hunter's evaluation) should be reimbursed because they were taken to remedy education deficits caused by Portland's denial of a FAPE to Doe from December 2017 to November 2019.

In the same decision, the hearing officer addressed a separate issue and expressly found that Portland's January 2020 IEP provided a FAPE under the IDEA. The hearing officer did not order ongoing placement at Aucocisco as of the time that she approved the January 2020 IEP.

Section 1415(j)'s plain language contemplates children remaining in their "then-current educational placement" during IDEA proceedings. Doe was at Breakwater School when his parents initiated the IDEA proceedings. However, under Burlington and § 300.518(d), a hearing officer's decision that parents' unilateral change of placement is appropriate can constitute

- 9 -

"agreement" between the state and parents for the purposes of the stay-put provision. On the facts here, those regulatory and case law requirements are not met. Further, the hearing officer did not ever determine that placement at Aucocisco was appropriate.

Doe argues that, because the hearing officer ordered repayment of the fall tuition at Aucocisco for a semester which continued until January (after the date of the decision), the hearing officer was actually ordering a continuing remedy. This misconstrues the hearing officer's decision, which was clear that reimbursement was being ordered for a denial of a FAPE between 2017 and 2019, and which expressly stated that "ongoing placement of [Doe] at Aucocisco is not ordered."[2]

Portland argues that the use of the present tense in § 300.518(d) as to whether a "change of placement is appropriate" is determinative in this case, because the hearing officer did not order ongoing placement at Aucocisco, merely reimbursement as a remedy for a past denial of FAPE. Doe argues that when reimbursement is ordered, there is agreement between the state and the parents that a change of placement is appropriate.

On the facts and the hearing officer's decision here, the regulation does not bear the construction Doe and the district

---

[2]     The hearing officer's decision specified that annual tuition at Aucocisco is $45,675, but the Does had thus far paid $25,121.25 towards the first semester, which was the amount being reimbursed.

court give it.  The hearing officer approved the January 2020 IEP as providing a FAPE.  She did not find that continuing unilateral placement by the parents at Aucocisco "is appropriate" so as to constitute agreement.[3]  The regulation speaks of a present change of placement, not a remedial order expressly limited to a fixed period in the past.  The hearing officer determined that the equities supported reimbursement to the parents for a prior denial of FAPE, but, on these facts, the hearing officer did not approve a change of placement for Doe.

**B.**

The district court order also errs in treating two separate provisions of the IDEA, § 1412(a)(10)(C)(ii), which deals with reimbursement for private education when a student is denied a FAPE, and § 1412(a)(1)(A), which requires states to make a FAPE available to children with disabilities, as one.  In addition to the requirement that school districts provide a FAPE, the IDEA provides that when parents unilaterally place a child with a disability in private school "a court or a hearing officer may require the agency to reimburse the parents for the cost of that

---

[3]    The dissent characterizes our decision as "effectively approv[ing] the state's unilateral decision to change [Doe]'s placement to public school."  However, it was the parents who unilaterally placed Doe at Aucocisco, and the case law is clear that "parents who unilaterally change their child's placement during the pendency of review proceedings, without the consent of state or local school officials" bear the risk that the change of placement will not be approved.  Burlington, 471 U.S. at 373-74.

enrollment if the court or hearing officer finds that the agency had not made a [FAPE] available to the child in a timely manner prior to that enrollment."  20 U.S.C. § 1412(a)(10)(c)(ii); see also Díaz-Fonseca v. Puerto Rico, 451 F.3d 13, 31 (1st Cir. 2006). This reimbursement is a form of equitable relief.  Díaz-Fonseca, 451 F.3d at 31.  The private school need not meet all of the IDEA's requirements for a FAPE in order for parents to be reimbursed for a placement.  See Florence Cnty. Sch. Dist. Four v. Carter ex rel. Carter, 510 U.S. 7, 13 (1993).  "The question of whether a unilateral placement is 'proper' [for reimbursement purposes] is 'viewed more favorably to the parent' than the question of whether 'the placement was required in order to provide a free appropriate public education . . . .'"  York Sch. Dep't v. S.Z. ex rel. P.Z., No. 13-CV-00042, 2015 WL 860953, at *17 (D. Me. Feb. 27, 2015) (quoting Rome Sch. Comm. v. Mrs. B., 247 F.3d 29, 33 n.5 (1st Cir. 2001)).

The two separate analyses as to two separate issues that the hearing officer performed, in determining whether reimbursement was warranted and whether the January 2020 IEP was suitable, support our conclusion.  The hearing officer determined that the Does should be reimbursed for costs they sustained to remedy the denial of a FAPE from December 2017 to November 2019, and stated she did so because placement at Aucocisco and private tutoring provided "some element of the missing special education

- 12 -

services." The hearing officer then determined that the January 2020 IEP met the more rigorous IDEA standard of being reasonably calculated to enable Doe to make progress in light of his specific circumstance, see Endrew F., 137 S. Ct. at 1001, and placed him in the least restrictive environment practicable, see 20 U.S.C. § 1412(a)(5)(A). Her application of these two different standards, as well as her finding that "ongoing placement . . . at Aucocisco is not ordered," demonstrate that she was not approving a change of placement.[4]

The IDEA's "elaborate administrative scheme" "places those with specialized knowledge -- education professionals -- at the center of the decisionmaking process" before parents can bring suit in state or federal court. Frazier v. Fairhaven Sch. Comm., 276 F.3d 52, 60 (1st Cir. 2002) (first quoting N.B. ex rel. D.G. v. Alachua Cnty. Sch. Bd., 84 F.3d 1376, 1378 (1st Cir. 1996)). "[T]he provision of judicial review is 'by no means an invitation to the courts to substitute their own notions of sound educational policy for those of the school authorities which they review.'" Id. at 61 (quoting Bd. of Educ. v. Rowley, 458 U.S. 176, 206 (1982)). Here, the hearing officer has clearly made the holdings

---

[4] In noting the separate analyses, we do not imply that a least restrictive environment finding is necessary in order for a hearing officer to determine that a unilateral change of placement to private school is appropriate. Our decision is limited to the facts of this case, where a current IEP was approved concurrently with the reimbursement order.

we have described. Under the IDEA, federal judges are not free to substitute their own views as to what the IDEA requires be provided to the child. "Judges are not education professionals and generally do not have the knowledge and expertise that hearing officers in IDEA cases have." Valentín-Marrero ex rel. GAJVM v. Puerto Rico, Nos. 20-2054, 20-2112, 2022 WL 872218, at *5 (1st Cir. Mar. 24, 2022). The hearing officer clearly held that she did not agree with the parents' unilateral change of Doe's placement to Aucocisco; indeed, she never found that the placement at Aucocisco offered a FAPE and, to the contrary, found that as of January 2020, Portland offered an appropriate IEP which provided a FAPE. It is Congress's determination that the child is best served in a setting where he receives a FAPE. See 20 U.S.C. 1412(a)(1)(A).

## C.

The case most heavily relied on by the district court, Sudbury Public Schools v. Massachusetts Department of Elementary & Secondary Education, 762 F. Supp. 2d 254 (D. Mass. 2010), is distinguishable. There, the hearing officer made no findings regarding prospective relief, but the district court found that reimbursement for a private placement in the past year, where the school's proposed IEP was not appropriate, was an agreement for purposes of the stay-put order. Id. at 268-69. This case is quite different from the one at hand, however, because the hearing

- 14 -

officer did not approve the IEP and made no prospective determination whatsoever in Sudbury.[5]

Affirming the district court decision would mean that even when school districts take actions to come into compliance with the IDEA and provide students with a new IEP providing a FAPE, as happened in this case, any past denial of a FAPE (before the school district supplies an IEP providing a FAPE) that the hearing officer determines should be reimbursed as an equitable matter will have far-reaching consequences. This would put the school district on the hook for placement at a private school for the pendency of litigation. IDEA litigation can be years long and, in that time, private school tuition can run in the hundreds of thousands of dollars. Wallkill, where a hearing officer found that a unilateral private placement was appropriate for one year but not the two subsequent years, demonstrates the potential

---

[5] Nor is our finding inconsistent with A.W. ex rel. B.W. v. Board of Education of Wallkill Central School District, No. 14-CV-1583, 2015 WL 3397936 (N.D.N.Y. May 26, 2015). In Wallkill, the administrative hearing officer found that the parents' unilateral placement was appropriate for one year, but inappropriate for the two subsequent years, and ordered reimbursement for only the first year. Id. at *2. The district court then declined to find agreement for the purposes of the stay-put order on the basis of that one year, reasoning that the administrative decision should be read comprehensively and that it would be unfair to "allow a party to cling to a discrete portion of a comprehensive decision to achieve their preferred outcome while discarding the more significant portion of that same decision which concurrently rendered a completely, overarching different result . . . ." Id. at *5. Similarly, it would be unfair here to ignore the entirety of the hearing officer's findings.

pitfalls of this approach. 2015 WL 3397936, at *2. Not only does the plain language of § 1415(j) and § 300.518(d) foreclose such a reading, but such an outcome is contrary to the IDEA's purposes.

The IDEA was "enacted . . . to ensure that disabled children could receive an appropriate education free of cost." Doe v. Bos. Pub. Sch., 358 F.3d 20, 23 (1st Cir. 2004). It also "manifests a preference for mainstreaming disabled children." C.G. ex rel. A.S. v. Five Town Cmty. Sch. Dist., 513 F.3d 279, 285 (1st Cir. 2008). Here, Portland has offered an IEP which the hearing officer found would provide Doe with a FAPE and which gave the Does the option of placing him at any of the district's public elementary schools. Portland has been ordered to reimburse the family for actions taken to remedy Portland's past denial of a FAPE. The purposes of the IDEA are not served by having Portland continue to pay for Doe's tuition at Aucocisco.

## IV.

We reverse the district court's grant of Doe's motion to enforce placement. No costs are awarded.

**-Dissenting Opinion Follows-**

**THOMPSON, <u>Circuit Judge, dissenting</u>**. This interlocutory appeal presents us with a specific and narrow issue to resolve: Pursuant to the Individuals with Disabilities Education Act's (IDEA) stay put provision, 20 U.S.C. § 1415(j), whether John Doe is properly placed at the private Aucocisco School during the adjudication of the Does' claims against Portland Public Schools. The answer, in my view, is a resounding yes. What will become clear in the analysis set forth below is that my view of the record in this case and the applicable statute is diametrically opposed to the majority's view.

My colleagues in the majority have covered the background in this case, but here are the vital pieces that propel my take on the issue before us: In October 2020, the hearing officer presiding over the Does' due process hearing concluded that Portland Public Schools had failed to provide John Doe with a free and appropriate public education (FAPE) (as required by the IDEA) from December 2017 through November 2019. To remedy this wrong, the hearing officer ordered Portland Public Schools to reimburse the Does for expenditures they had made on their own initiative for John's education from May 2019 through December 2020. <u>See</u> <u>Burlington Sch. Comm.</u> v. <u>Dep't of Educ.</u>, 471 U.S. 359, 370 (1985) (stating retroactive reimbursement to parents for school tuition is an available and proper remedy for denial of a FAPE). The reimbursement order -- approximately $74,600 --

- 17 -

included the Does' expenditures for tutoring and summer programming at Aucocisco beginning in May 2019, private tutoring during fall 2019, tuition at Aucocisco for spring, summer, and fall 2020, an evaluation to assess an orthographic processing disorder, plus some transportation costs. The hearing officer found that "[t]he tutoring and programming provided by Aucocisco, as well as the tutoring provided while [John] was enrolled at Breakwater, easily satisf[ied] the standard of being proper under the Act by providing some element of the missing special education services." (Internal quotation omitted). In the same order, the hearing officer also concluded that the IEP Portland Public Schools proposed to the Does in January 2020 (which would place John in one of Portland's public schools with a portion of each day spent in one-on-one instruction for reading, writing, and math as well as other supports built into the week) "was reasonably calculated to enable [John] to make progress appropriate in light of his circumstances and thus offered him a [FAPE]. . . . Because an appropriate IEP was offered in January 2020, ongoing placement of [John] at Aucocisco is not ordered."

The Does' complaint filed with the district court appeals the hearing officer's conclusion about the proposed IEP, requests recovery of the attorneys' fees and expenses throughout the due process administrative proceeding pursuant to § 1415(i)(3)(B), and claims Portland intentionally discriminated

against them when it denied John special educational services[6] in violation of the Americans with Disabilities Act, 42 U.S.C. § 12132, and Section 504 of the Rehabilitation Act, 29 U.S.C. § 794.  Neither party in this litigation has challenged the scope or the amount of the reimbursement the hearing officer ordered.

While those four claims have been percolating, the Does asked the district court to enforce placement for John at Aucocisco for the duration of the judicial proceedings.[7]  As we already know, the district court granted the motion and Portland Public Schools sought an interlocutory appeal hoping to overturn the district court's decision.  All we are called upon to decide at the moment is where the stay put provision, applied to the record before us, places John while the parties litigate the Does' claims.

The IDEA's stay put provision directs that, "during the pendency of any proceedings conducted pursuant to this section, unless the State or local educational agency and the parents otherwise agree, the child shall remain in the then-current educational placement of the child."  20 U.S.C. § 1415(j).  The

---

[6] The Does allege that the Portland school psychologist who initially evaluated John showed disability-based animus towards him because she admitted at the due process hearing that she is "biased" towards keeping students in a regular education setting to watch for improvement.

[7] The docket for the underlying case shows Portland Public Schools moved for summary judgment on the Does' two discrimination claims and that this motion is still pending before the district court.

IDEA does not define "then-current educational placement," but the implementing regulation provides an important piece of guidance: "If the hearing officer in a due process hearing . . . agrees with the child's parents that a change of placement is appropriate, that placement must be treated as an agreement between the State and the parents for purposes of [the stay put provision]."  34 C.F.R. § 300.518.  This court has previously noted that "the interim placement during proceedings challenging the child's regular placement shall be the child's current educational placement, 'unless the . . . educational agency and the parents otherwise agree.'"  Verhoeven v. Brunswick Sch. Comm., 207 F.3d 1, 7-8 (1st Cir. 1999) (quoting § 1415(j)).  And, importantly, this court has repeatedly emphasized that the stay put provision "is designed to preserve the status quo pending resolution of administrative and judicial proceedings under the [IDEA].  The preservation of the status quo ensures that the student remains in the last placement that the parents and the educational authority agreed to be appropriate."  Verhoeven, 207 F.3d at 10 (quotation and citation omitted); see Doe v. Brookline Sch. Comm., 722 F.2d 910, 915 (1st Cir. 1983).  All of this means that, when we are asked to determine the stay put placement, we are looking back for the last time the parents and the state agreed on a placement.

The district court granted the parents' Motion to Enforce Maintenance of Placement at Aucocisco because it concluded

"Aucocisco was the last placement that both the Does and the State agreed to [and] that Aucocisco is John's proper placement for purposes of the stay put provision of the IDEA. . . . Portland is therefore required to fund John's education at Aucocisco throughout these judicial proceedings." In my view, the district court hit the nail on the head.

The way I see it, the application of the statutory language to the hearing officer's decision leads to the inescapable conclusion that John should remain at Aucocisco during the pendency of his litigation against Portland Public Schools. Here's why. The statutory framework indicates the stay put placement is the last location the parents and state agreed on. The record is crystal clear that the parents want John placed at Aucocisco and have not agreed to a change of placement back to Portland's public schools. As for the state's point of view, 34 C.F.R. § 300.518(d) tells us that when the hearing officer presiding over a due process hearing agrees with the parents that a change of placement is appropriate -- as the hearing officer did when she stamped her seal of approval on the parents' unilateral decision to move John to Aucocisco when the state wouldn't step up and address John's needs -- this placement "*must* be treated as an agreement between the state and the parents for purposes of" stay put. (Emphasis mine.) In addition, to order reimbursement for a unilateral private school placement, the hearing officer must first determine

that the school district violated the student's right to a FAPE and that the private school placement chosen by the parents is appropriate under the IDEA. 20 U.S.C. § 1412(a)(10)(C)(ii) (allowing reimbursement if the hearing officer finds the public agency denied the student a FAPE); Florence County Sch. Dist. Four v. Carter, 510 U.S. 7, 15 (1993) (stating parents "are entitled to reimbursement *only* if [the presiding officer] concludes both that the public placement violated the IDEA and that the private school placement was proper under the Act"). The hearing officer acknowledged these two requirements before she ordered the reimbursement to the Does, then explicitly concluded she found Portland denied John a FAPE and that the "tutoring and programming provided by Aucocisco . . . easily satisf[ied] the standard of being proper under the Act by providing some element of the missing special education services." (Internal quotation omitted). The hearing officer then itemized the expenses to be reimbursed, which included the Does' tuition expenses at Aucocisco covering the 2020 calendar year. So it's clear to me that the last place the parties agreed was the right place for John was Aucocisco, and Aucocisco is therefore not a change of placement but the statutory stay put placement for John while the district court adjudicates the Does' claims.

The hearing officer's closing sentence in her order -- "[b]ecause an appropriate IEP was offered in January 2020, ongoing

placement of [John] at Aucocisco is not ordered" -- does not change the outcome of the analysis. Her thumb on the scale for John's future placement is not an agreement between the state and parents for a change of placement because the parents clearly didn't agree with the public school + one-on-one extras, as demonstrated by their appeal of this conclusion to the district court. And I think it's worth repeating that the district court has yet to resolve this issue. Because the hearing officer's conclusion is not an agreement between the state and the parents for a change in placement, I once again land back at the last time the parents and state *did* agree -- which was when the hearing officer concluded that the parents' unilateral placement of John at Aucocisco was okay. See Verhoeven, 207 F.3d at 7-8 ("The interim placement during proceedings challenging the child's regular placement shall be the child's current educational placement, 'unless the . . . educational agency and the parents otherwise agree.'") (quoting § 1415(j)); 34 C.F.R. § 300.518(d).

I acknowledge that this last sentence of her order -- when she stated she was not ordering continuing placement at Aucocisco -- could be read as a confusing internal discrepancy because she okayed both the reimbursement of Aucocisco tuition expended for fall 2020 and the proposed IEP in which Portland would have placed John at a public school for the same time period. This last sentence could be a reflection of her conclusion that the IEP

offered met the statutory standard, meaning that although the Does' unilateral decision to place John at Aucocisco was fine and they were entitled to reimbursement for the tuition they had paid in 2020, John would have a change of placement coming up after that. Regardless, this conclusion does not reflect an agreement between the parents and the state because the parents didn't agree with Portland Public Schools or the hearing officer on this point. Moreover, and at the risk of sounding like a broken record, the issue before us is not about John's ultimate proper placement; it is about where he should be educated while his parents challenge the hearing officer's conclusion about the propriety of the proposed IEP in addition to their other claims.

My conclusion is also consistent with the stay put policy's central objective: to provide stability for the child during the pending of judicial proceedings by preserving the status quo. See Verhoeven, 207 F.3d at 10; Brookline Sch. Comm., 722 F.2d at 915. The majority's holding -- which effectively approves the state's unilateral decision to change John's placement to public school -- violates this policy because it will force John back to a school he hasn't attended in almost three years. And he may be heading back there eventually, but at this point his parents have not agreed to this placement and the stay put policy clearly seeks to find the last place agreed to by both sides and to prevent a student from ping ponging between schools while the parents fight

for their child's rights to supplemental education services when, as here, the child has been deemed eligible.  The majority opinion sets an unfortunate precedent, one that goes beyond the simple application of the stay put provision to the record of this case and dishonors the spirit of the stay put provision.

For the reasons I have explained, the application of the stay put provision to the record of this case shows that John Doe's proper and current placement is at Aucocisco.  Accordingly, I *dissent*.